meanors was in the discretion of the court. It will be seen, therefore, that the reason for the English distinction between felonies and misdemeanors, to which we have referred, does not exist in this country; and, as Judge Rapallo says, no reason exists, so far as the rights of the prisoner are concerned, whether the joinder of different offenses in one indictment, and their trial in one proceeding, are felonies or misdemeanors. In People v. McGeery, 6 Parker, Cr. R. 653, in 1863, the Monroe general term held that on a general verdict of guilty upon the trial of an indictment which contained counts for burglary, larceny, and for receiving stolen property knowing it to have been stolen, the defendant was properly sentenced for the highest crime charged in the indictment; and the same general term, in People v. Bruno, Id. 657, where an indictment contained two counts, —one for larceny, and the other for receiving stolen property knowing it to have been stolen,—and the jury found a general verdict of guilty, and it appeared that both counts related to the same transaction, held that there was no ground for sustaining a motion in arrest of judgment, but the judgment should be given for the highest grade of offense. In the last case the prisoner's counsel moved the trial court in arrest of judgment on the ground that the indictment contained two counts,—one for larceny, and the other for receiving stolen property, knowing it to have been stolen,—and, the jury having found the general verdict of guilty, it is impossible (it was urged) for the court, without an arbitrary selection, to determine the proper judgment to be pronounced. Very much the same point as is made here in the Kerns case. That point, however, was overruled by the appellate court, and the conviction affirmed. It is impossible for us to see, from the record before us, wherein the defendant Kerns was prejudiced by the proceedings of the trial court that we have considered. That being so, our manifest duty is to affirm his conviction.

The judgment and order of the court of sessions of Monroe county in the case of the appellant Michael Slattery, and also in the case of Edward Kerns, should be affirmed. All concur.

---

(7 App. Div. 488)

### DAVIS v. AMERICAN CENT. INS. CO.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

FIRE INSURANCE—CONDITIONS IN POLICY—SALE OF DAMAGED GOODS.

A policy for $1,500 on goods valued at $16,000, issued by defendant, provided that it should be optional with defendant to take the goods damaged by fire within 30 days thereafter at their appraised valuation. The goods were insured in 12 other companies for the balance of their value. Two-thirds of the goods were totally destroyed by fire, and the balance greatly damaged. The insured gave notice to defendant's agent, and, after keeping the damaged goods for 18 days, during which time none of the 13 companies claimed them, they were sold at public auction for $250, after advertising the sale in two daily papers. *Held*, that defendant's contention that plaintiff should have kept the goods for 30 days was unreasonable.

Appeal from circuit court, Erie county.

Action by Isaac Davis against the American Central Insurance Company to recover $1,393.31 on a policy of fire insurance issued by defendant. From a judgment for $1,559.01 damages and costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Porter Norton, for appellant.

Moses Shire, for respondent.

WARD, J. On the 30th of June, 1893, the defendant (the appellant here) insured a stock of goods of one Victor Davis, consisting of cloths, clothing, and trimmings, manufactured and in process of manufacture, and all materials and supplies used in his business, his own, or held in trust, or sold, but not removed, all contained in the brick and frame buildings situate Nos. 592, 594, East Genesee street, in Buffalo, N. Y., and other insurance permitted, for the term of one year, against all direct loss or damage by fire to an amount not exceeding $1,500. On the 23d of August, 1893, J. N. & F. I. Dorr, the general agents and managers of the defendant at Buffalo, having full power to make the same, executed in writing upon the policy the statement that, as it was understood the title to the insured property was vested in Isaac Davis (the plaintiff herein), he was thereby recognized as the insured under that policy, but the policy provided that the defendant should not be liable under the policy for a greater proportion of any loss on the property insured than the amount insured should bear to the whole insurance, whether valid or not. On the 10th day of November, 1893, the insured property was substantially destroyed by fire. There was evidence given upon the trial which might authorize the jury to find that the total value of the goods insured was about $16,000; that $11,000 thereof was totally destroyed; and that there were remnants of goods left from the fire, more or less burned, saturated with water, and otherwise injured, so as to be of little value, much of which was almost beyond identification, but that the original cost of those remnants was $5,459, but in the condition in which they were after the fire but little else could be done by way of realizing upon the value thereof than to dispose of the same at auction, or to some dealer engaged in the same line of business. These remnants remained for inspection, inventory, and examination from the time of the fire until the 28th day of November, 1893, when they were sold at public auction at the place of the fire, in the afternoon, by Robert McCann, a public auctioneer in the city of Buffalo, and altogether brought the sum of $250. The notice of the auction sale was duly published in two of the daily papers in the city of Buffalo. Notice of the loss by fire was served upon the Messrs. Dorr, the local agents of the defendant in Buffalo, who issued the policy and made the indorsement of transfer aforesaid. These local agents immediately transmitted the notice to Mr. Van Valkenburg, who testified

that he was the general agent of the defendant in this department, which included the state of New York. He received the notice within four or five days of the fire. No attention was paid to this fire, or the remnant of goods left from the fire, prior to the auction sale, by the defendant or any of its agents; and the defendant never demanded an appraisal of such remnants, or an inventory of the same, or indicated in any manner a desire to replace the goods lost or damaged, or to repair the same. The policy in question is what was known as the "Standard Policy" authorized by the laws of this state, and applicable to all fire insurance corporations, as prescribed in section 121 of chapter 690 of the Laws of 1892 and section 25 of the same chapter. With the consent of the defendant the property insured and covered by its policy was also insured in 12 other insurance companies; in the Aetna of Connecticut in the sum of $3,500, in six other companies in the amount of $1,000 each, in four companies in the sum of $1,125 each, and in one company besides the defendant in the sum of $1,600. The total amount of insurance in all the companies was $17,000, and the amount claimed of the companies was $15,790.76. It may be assumed that the policies in each of these other companies were made according to the standard form, and the evidence indicates that immediately after the fire and before the sale of the remnants the other companies, by their agents, appeared upon the grounds, and took measures to have an appraisal made of the remnants; at least such appraisal was made by two disinterested appraisers, the result of which does not appear in the evidence. The plaintiff, within reasonable time, made due proofs of the loss, which were served upon the defendant, and such proofs of loss seem to have been retained by it without objection, and we must therefore regard them as sufficient, and as fully complying with the conditions of the policy.

The only point pressed by the learned counsel for the appellant in the argument before us was that, without notice to the defendant, the plaintiff sold and disposed of the goods not entirely consumed by the fire in a short time after the fire, and before service of proofs of loss, in violation of the provisions of the policy, which, in effect, gave the defendant the right to have an appraisal of such goods, and to take such goods at the appraisal, or repair or replace the property lost or damaged on giving notice within 30 days after the proofs of loss had been served; and that the proofs of loss were not served until after the disposition of the remaining goods by the plaintiff, and that the policy itself made it the duty of the plaintiff to hold the goods subject to such right, and subject to the rights of the defendant to have an inventory of the goods, and that the performance of these conditions under the policy was a condition precedent to the plaintiff's right of recovery. The provisions of the policy upon which the appellant relies to sustain this contention are as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper

deduction for depreciation, however caused, and shall in no event exceed what it shall then cost the insured to repair or replace the same with materials of like kind and quality. * * * The sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with the company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind or quality within a reasonable time, on giving notice within thirty days after the receipt of the proof herein required of its intention so to do; but there can be no abandonment to this company of the property described. * * * If fire occurs, the insured shall give immediate notice of any loss thereby, in writing, to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company. * * * The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices (etc.), * * * at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made. * * * This policy is made and accepted subject to the foregoing stipulations and conditions."

The appellant's complaint is directed entirely to an assumed breach of the provisions of the policy by the plaintiff that occurred after the loss by fire. At that time the liability of the defendant under the insurance policy to respond to the loss was fixed to the extent of the defendant's proportional part thereof, provided the proceedings of the plaintiff to establish that loss were substantially as required by the policy. The rule of construction in such cases is well laid down by the court of appeals in McNally v. Insurance Co., 137 N. Y. 398, 33 N. E. 475:

"In determining a liability of a defendant, it is entitled to the benefit of its contract, fairly construed, and can stand upon all its stipulations. But when its liability has become fixed by the capital fact of a loss, within the range of the responsibility assumed in the contract, courts are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribe the formal requisites by means of which this accrued right is to be made available for indemnification. If, in this case, a right of action accrued to the plaintiff by reason of the destruction of the property by fire, * * * a liberal and reasonable construction of the stipulation of the contract which prescribe the formal acts on the part of the insured necessary to the recovery of the loss, is sanctioned and required by the rules of law,"—citing May, Ins. (3d Ed.) § 217; Hinman v. Insurance Co., 36 Wis. 159; McLaughlin v. Insurance Co., 23 Wend. 525; Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309; Kratzenstein v. Assurance Co., 116 N. Y. 54, 22 N. E. 221; Hoffman v. Insurance Co., 32 N. Y. 405.

In considering this question we should regard the circumstances surrounding the property and the parties. As we have seen, the defendant's responsibility for this loss was less than 10 per cent. The other companies chargeable with the loss gave attention immediately to the condition of the property not destroyed by the fire, and each company had a right—assuming, as we do, that the policies were uniform in their provisions, as required by statute—

to avail itself of the same conditions as to appraisal, taking the property, replacing or repairing it, as the defendant had. The right of each company pervaded the whole property remaining after the fire, so that each company, in a sense, was a tenant in common with every other company, or had a right in common with every other company to the extent of its liabilities in proportion to the other companies respectively to have the property appraised, and to take the same at such appraisal, or to repair or replace the same.

In the case before us the inquiry arises how the defendant could have exercised the right it claims to have been deprived of by the premature disposition of the damaged property, in view of the fact that all the other companies failed to assert any such claim. Would the defendant be entitled to separate, say one-thirteenth, of this damaged property, and replace it or repair it, or take it at a valuation? The learned counsel for the appellant has failed to enlighten us in regard to these difficulties. We refer to them to show the situation in which the plaintiff was placed after the fire with these damaged goods upon his hands, with the other companies substantially consenting that a sale thereof be made, or at least making no claim that would prevent it, and the defendant, though notified of the loss, taking no part or insisting in any manner upon the conditions insisted upon here, which it was bound to do within reasonable time if it desired to avail itself of such provisions in the policy, or the right would be waived. It was well said by the learned trial judge in his charge to the jury "that the damaged goods were sold for two hundred and fifty dollars; that there is no proof in the case that the goods were not sold for what they were worth. The proof is that everything that was saved out of this stock was advertised in two newspapers at least twice; that an auctioneer was employed, and the regular flag was put out; that the bids were invited, and that all that was left of this property was sold for $250." The contention in this case, that under the circumstances of the case it was the duty of the plaintiff to keep these goods, in the absence of all request or attention from the defendant or its agents, for a period of 30 days after the furnishing of the proofs of loss, to await any possible request for an appraisal of these goods that were of such little value, or to replace those goods that could hardly be identified, or to repair goods when repair was impossible (which the jury might well have found), when, after a period of at least 14 days from the time of notice of loss, the goods had been kept, and were necessarily getting of less value from their condition as time passed on, is unreasonable, and is not within the purposes or spirit of the contract between the parties.

We have reached the conclusion that the judgment and order appealed from should be affirmed, with costs. All concur, except HARDIN, P. J., not voting.