## ASTRICH v. GERMAN–AMERICAN INS. CO.

(Circuit Court, M. D. Pennsylvania. February 19, 1904.)

### No. 4.

1. **FIRE INSURANCE—VIOLATION OF CONDITIONS BY INSURED AFTER LOSS—SALE OF UNDESTROYED PROPERTY.**

    A policy issued by defendant insuring merchandise against fire to the extent of the actual loss, not exceeding its face, provided that in case of loss the insured should exhibit the property remaining to the representative of the company as often as required; that the loss or damage should be ascertained by agreement, or, if the parties differed, by appraisement; that it should be optional with the company to take any part of the remaining property at the appraised value, and also to replace or repair the property lost or damaged on giving notice of its intention within 30 days after receipt of the proofs of loss. There was a loss; the property being also covered by other policies. The insured separated the damaged from undamaged property remaining, and it was examined by the adjusters. Failing to agree as to the loss, they went away, and plaintiff, the insured, without notice to defendant, sold out the remaining goods at retail, commencing such sale before making proofs of loss. Defendant, learning that such sale was about to be held, notified plaintiff not to sell the goods, that it desired to exercise its right to further examine the same, calling his attention to the terms of the policy, and stating that, if he proceeded with the sale, it would render the policy void. *Held*, that the rights so secured to defendant were substantial, and that plaintiff, having deprived it of the further right to examine the goods, in order to have the same appraised, and to exercise its option to take the same at appraised value, after the distinct notice that it insisted upon such rights, could not recover on the policy.

2. **SAME—RIGHT TO HAVE DAMAGED GOODS EXHIBITED—RIGHT TO AN APPRAISAL—SALE OF GOODS IN DISREGARD OF SAME.**

    The provisions of a policy of fire insurance, giving the right to the insurer to have the damaged goods exhibited to it as often as required, and to have the loss, in case of a disagreement, determined by appraisement, looking as they do to the correct ascertainment of the loss, cannot be disregarded by the insured; and a sale of the goods by him, by which these rights are cut off, avoids the policy and prevents a recovery thereon.

3. **SAME—RIGHT TO APPRAISEMENT—TIME FOR EXERCISE—DETERIORATION OF GOODS—NOTICE.**

    (a) The right to have the loss determined by appraisement, where no time is fixed for its exercise, must be demanded within a reasonable time.

    (b) Where, therefore, goods are deteriorating or becoming rotten and unhealthy, a notice to the insured of the necessity for a prompt disposition

of them would seem to meet the difficulty, compelling an exercise of the right, without abridging it.

4. SAME—PUBLIC SALE OF GOODS AS EVIDENCE OF VALUE.

It is no defense to a sale to say that the object of an appraisal is merely to determine the value, which is sufficiently shown by the sale itself. This is not the method provided by the policy, and cannot be substituted by the insured at will.

5. SAME—WAIVER OF APPRAISEMENT.

Neither is it a waiver of an appraisement that one of the adjusters, who was present when a preliminary examination of the goods was being made, declared that an appraisement would be useless, without a statement from the insured as to the amount of the goods burned out of sight, which he declined to give.

6. SAME—RIGHT TO HAVE DAMAGED GOODS EXHIBITED—INSPECTION BY ADJUSTERS.

The right of the insurer to have the goods exhibited as often as required is not affected by the fact that they were examined by adjusters of the company at a preliminary stage of the controversy, in an effort to arrive at an amicable settlement of the loss.

7. SAME—REASONABLE CONSTRUCTION OF POLICY—NOTICE TO INSURED TO RETAIN GOODS—SALE IN DISREGARD OF SAME.

While the provisions of a policy as to an appraisal are to receive a reasonable construction, with the proofs of loss only just made out, and not yet on the way, it was not unreasonable to require the insured, who was about to make sale of the damaged goods, to retain them to await the possible exercise of the right of inspection and of appraisal, and, having gone on and sold in disregard of such notice, he could not recover.

8. SAME—RIGHT TO TAKE AND REPLACE GOODS DAMAGED—SALE IN DISREGARD OF—DIFFERENT INSURERS—SEVERAL OR JOINT ELECTION.

(a) Where the right to take and replace any part or all of the goods damaged is given by a policy of fire insurance, to be exercised within 30 days after receipt of proofs of loss, the company is ordinarily entitled to the full period to decide, and a sale of the goods by the insured meanwhile, in the face of the protest of the company, materially abridges this right and avoids the policy.

(b) This is not affected by the fact that there are several insurers who are only ratably liable, and may have divergent views. This does not prevent a several election, and they may conclude to join, with neither of which has the insured a right to interfere.

At Law. On rule for judgment in favor of defendant non obstante veredicto on reserved point.

This was an action on a policy of insurance for $4,500 on a stock of millinery goods. The total amount of insurance carried was $22,000, which the plaintiff claimed was exceeded by his loss. The jury having found in favor of the plaintiff for practically the full amount of his claim, the verdict was taken subject to the following point of law reserved:

"It being the undisputed evidence that the plaintiff's stock of goods was insured to the extent of twenty-two thousand dollars ($22,000) in thirteen (13) different companies, of which the defendant was one, the insurance in such company being $4,500; that a fire occurred on December 16, 1902, during the life of the said policy, by which a large part of the said stock was entirely consumed, and other parts damaged by fire, smoke, and water; that immediately after the fire the plaintiff put in order the stock that was left, separating the damaged from the undamaged goods, and arranging, scheduling, and valuing the damaged goods; that on December 29th and 30th, after due notice, agents and

¶ S. See Insurance, vol. 28, Cent. Dig. § 1292.

adjusters representing the said several insurance companies, including the defendant, went upon the premises and investigated the loss, and, for the purpose of ascertaining the extent of the same, examined the books, bills, and accounts of the plaintiff carefully and thoroughly, and inspected the damaged and undamaged stock, being occupied in such examination more or less for two (2) days; that as the result of the same they collectively offered, on behalf of all the said companies, to pay the plaintiff in settlement of his said loss the sum of twenty-two thousand dollars, the aggregate amount of his insurance, the said companies to take the stock which remained and wreck the same—that is to say, ship it to New York or some such general market, and there have it put in order by persons experienced in such business, and then and there sell it by auction or otherwise for such price as it would bring, the plaintiff to receive all that it brought up to five thousand dollars, after deducting expenses, and the insurance companies to receive the excess above that sum, which offer the plaintiff refused; and that the said agents then and there made a further offer to pay the plaintiff, in settlement of his said loss, the sum of $17,500, he retaining for his own benefit the said stock on hand, which offer the plaintiff also refused; that thereupon he was told by the said agents to read his policy, and observe its terms, on which the parties then and there separated; that afterwards the plaintiff made out due proofs of loss, which he forwarded to the defendant company on January 9th following, which were duly received by said company; that on January 8th—the day before he furnished said proofs—after first having advertised the damaged stock for sale, the plaintiff, without notice to said companies, began to make private sale thereof, and continued to sell the same for the three days next following, until the said goods were disposed of, realizing therefrom the gross sum of about sixty-two hundred dollars ($6,200), and being at the expense of about two thousand dollars ($2,000) in so selling them; that the insurance companies, including the defendant, having learned that such sale was about to be made, notified the plaintiff by telegram and letter, both dated January 7th, and duly received in advance of such sale, that he should not dispose of the said goods, that they desired to exercise the rights, given them by the policies of insurance which he held, of further examining said goods to determine their value and the loss or damage sustained thereon, and calling attention to the fact that the said companies had the right, if they desired, to take the stock, or, in case of disagreement as to the extent of the loss, to have the same determined by appraisement, and thereupon notifying plaintiff that, if he proceeded with the sale, his policies would be rendered null and void; and that, notwithstanding such notice, the said plaintiff proceeded to make sale of the said goods; whereupon, in view of the provisions of the policy in suit, a copy of which is attached to plaintiff's declaration or statement, and is made a part of this point, the question of law is reserved whether the policy, by reason of the said sale so made by the plaintiff, was avoided, and whether the plaintiff is entitled to recover thereon in this action; with leave to the court to enter judgment in favor of the defendant notwithstanding the verdict if it be found that such is the law."

It was provided, in substance, in the policy on which suit was brought, which was of the standard form, that the loss or damage should be ascertained or established by the insured and the company; or, in case they differed, then by two competent and disinterested appraisers, each party choosing one, and the two so chosen selecting an umpire; the award of any two in writing to determine the amount of the loss. Also, that the insured, as often as required, should exhibit to any person designated by the company all that remained of the property insured; and that it should be optional with the company to take all or any part of the articles at the ascertained or appraised value, and also to repair or replace the property lost or damaged with others of like kind and quality within a reasonable time, on giving notice within 30 days after the receipt of the proofs of loss of its intention so to do.

Cyrus Derr and W. M. Hargest, for the rule.
Charles H. Bergner and John E. Fox, opposed.

ARCHBALD, District Judge.　The undertaking of the defendants as insurers was one of conditional indemnity only, their liability in case of loss being limited to the actual damage sustained—not exceeding the amount of the policy—upon compliance on the part of the insured with the terms and conditions there named.　To assist in the correct ascertainment of it, certain duties were imposed upon the insured, prominent and primary among which was that he should give immediate notice of the fire; forthwith separate the damaged from the undamaged property, putting the same in the best order possible, and making a complete inventory of it; and within a specified time furnish itemized proofs of loss made up and verified in a stated way.　So far the plaintiff complied with the demands of his contract, but the difficulty lies with that which remains.　Among the general provisions of the policy it was made the duty of the insured, as often as required, to exhibit to any person designated by the company all that remained of the property injured.　It was also provided that, in the event of a disagreement as to the amount of the loss, it should be ascertained by competent and disinterested appraisers to be chosen by the parties; and that it should be optional with the company to take all or any part of the articles insured at their ascertained or appraised value, and to replace those lost or damaged by others of like kind and quality, on giving notice of their intention so to do within 30 days after the receipt of proofs of loss.　It is because the defendants, as they claim, have been deprived by the acts of the plaintiff of the rights so secured to them by the policy, that defense is made.

The fire occurred December 16, 1903, and a large part of the stock insured was entirely destroyed.　The total insurance carried was $22,000 ($4,500 of which was with the defendant company), and, according to the plaintiff, was exceeded by the loss incurred.　On December 29th the agents and adjusters of the several companies involved appeared on the scene, and, after going over the books and papers of the plaintiff, and carefully inspecting the stock which remained, endeavored to arrive at an amicable settlement with him of the loss.　An offer was made to collectively pay the full amount of the insurance ($22,000), with the proviso that the companies should take the damaged goods, and, after shipping them to New York or Philadelphia, and having them put in order there, should have them sold in the general market, the plaintiff to receive all that was realized up to $5,000, and the companies whatever there was above that.　This was rejected, and they then offered as an alternative to pay $17,500, the plaintiff to keep his goods, and get out of them what he could on his own account.　This also was refused, and the parties separated, the plaintiff being notified to read his policy and observe its terms.　This occurred on December 30th, and the plaintiff immediately arranged for a fire sale of the damaged goods.　It took place on January 8th, and continued for the next three days, the whole lot being disposed of at retail at prices to suit customers.　The insurance companies, having learned that the sale was to take place, gave notice to the plaintiff by telegram

and registered letter, which were both received the day before it began, that he should not go on with it, as they desired to exercise the right given them of further examining the goods, calling attention also to the fact that they had the right, if they wished, to replace any part of the stock, and, in case of a disagreement as to the amount of the loss, to have it determined by appraisement; and notifying him that it would avoid his policies if he proceeded; notwithstanding which he went on and sold. All this occurred in advance of the proofs of loss, which were not started on their way until the day after the sale began, nor received until the day following, January 10th, at which time the goods had been substantially disposed of.

The provisions of the policy to which reference has been made, looking as they do to the correct ascertainment of the loss sustained by the insured, cannot be disregarded by him. Oshkosh Match Works v. Manchester Fire Assur. Co., 92 Wis. 510, 66 N. W. 525; Thornton v. Security Ins. Co. (C. C.) 117 Fed. 773. Like the giving of immediate notice of the fire, the furnishing of proofs of loss, or the submission to an examination under oath, and the production of books and papers, with which they are closely associated and allied, they are conditions of the contract, inserted for the protection of the insurers, who are entitled to the full benefit of them. If, therefore, they are deprived of them by the act of the insured, he cannot expect to enforce the contract which he has thus broken, there being no way by which compensation can be made, or the rights that have been set aside restored. The right to an appraisal was absolute, if the insurers found that they desired it, and it was essential to this that the damaged stock should be retained. Looking into the evidence for the sake of argument, one of the most serious points of difference between the parties at the time the adjusters were there was the salvage value of the goods unburned. On the one side they were held to be worth $10,000 above the expense of putting them in order and selling them, and on the other but $3,000; while, as sold by the plaintiff, they realized $4,200. On an appraisal the amount to be allowed for them could only be determined by inspection, for which, of course, the goods themselves would have to be on hand. An attempt to fix the loss without them, if not impossible, would be seriously hampered; the opportunity to examine them being one of the merits of this course. But by a sale and dispersal of the goods, such as took place, that opportunity was entirely cut off, and an attempt to hold an appraisal after it would be practically useless. If the goods, as it is claimed, were deteriorating by being held, or had become rotten and unhealthy, the difficulty could easily have been met without abridging the right in question. No time is fixed in which an appraisal is to be asked for, and it must therefore be demanded within that which according to the circumstances is reasonable. Chainless Cycle Mfg. Co. v. Security Ins. Co., 169 N. Y. 304, 62 N. E. 392. A notice, therefore, to the insurers, of the condition of the goods and the necessity for promptly disposing of them, would have compelled them—if this was found true—to exercise their rights, or else to forego them. It is no answer to say that the only object of an appraisal is to determine the value, and that this was sufficiently shown by the sale. That may be some evidence on the subject, but it is not the method provided by the

policy for determining it if the appraisal is desired, nor can the insurers be put off with any such substitute. It is to be remembered also that the sale was private, and at prices fixed by the plaintiff, and that the goods were mixed with others, to their possible disadvantage; the object being to dispose of both together. The prices obtained at a sale carried on in this way, to which buyers are drawn by the expectation of bargains, is very imperfect evidence on the question of value.

It cannot be charged that the right to an appraisal is not asserted in good faith, advantage being taken of the situation to defeat by a technicality an honest loss. Whatever might have been the case had the insurers suffered the sale to go on without challenge, as in Davis v. American Central Ins. Co., 7 App. Div. 488, 40 N. Y. Supp. 248, nothing of that kind can be predicated of what we have here. Acting on the information which they had of the sale—not obtained from the plaintiff, who took no pains to let them know—they gave immediate notice in the most positive terms of their intention to stand on their rights, and of the result to the plaintiff if he went on in disregard of them. It was his duty, on the receipt of this, to stop; and, if any bad faith was exercised at this juncture, it certainly cannot be charged upon the insurers. When the plaintiff went on and sold, as he did, in the face of it, he took the risk of what should follow, and has only himself to blame.

It is said, however, that at the time when the adjusters were there it was declared by Mr. Berkey, speaking for the rest, that without a statement from the plaintiff as to the amount of the goods burned out of sight an appraisement would be useless. This is not found in the point reserved, and is not, therefore, a part of the record. But, even if it were, it could have no effect. At the most it was a mere expression of opinion, based on the alleged recalcitrancy of the plaintiff in refusing to give an estimate of the value of the goods destroyed—a casual observation, which cannot be wrested into a waiver without which the provision of the policy of course remains.

Important, also, to the insurers—as we must assume—were the other rights involved. It is true that the agents and adjusters who were present on December 29th and 30th inspected with some thoroughness the damaged goods, and on the strength of their examination made the offers of settlement mentioned. But this was in the preliminary stage of the controversy, when an effort was being made to reach an amicable adjustment. When it failed, and the parties fell apart, they were remitted to their several rights, which each side was bound to respect and observe. Recognizing this, the plaintiff drew up and forwarded his proofs of loss, on the receipt of which the insurers were entitled, if they found it necessary, to require a new exhibition of the damaged goods, just as they had the right to call for his books and papers, or to demand that he should submit to an examination under oath. Undoubtedly, this provision of the policy is to receive a reasonable construction; but with the proofs of loss only just made out, and not yet on their way, it certainly cannot be held to have been unreasonable to require of the insured that he should retain the goods to await the possible exercise of the right of further inspection, if desired.

The same is true with regard to the right to take and replace any

part or all of the goods lost or damaged. This, be it noted, is not simply the right to replace, and so confined to the property actually destroyed, but is to take and replace, and so extends also to that which is only damaged. Unquestionably, therefore, it was materially abridged by the plaintiff's sale. Notice of the intention to exercise this right did not have to be given until 30 days after the receipt of proofs of loss, and the insurers were entitled to this full period in which to make up their mind. They did not have to decide on the spot, and could not be made to do so. It is no objection, therefore, that in notifying the plaintiff not to sell they did not say positively that they proposed to exercise the right, but only that they might want to. They were not bound to do more. The notice was precautionary merely, so that they could not be charged with having kept silent in the face of it, and that is all that could be asked of them at that time. I do not lose sight of the fact that there were several insurers who were only ratably liable, and might have divergent views. But that did not prevent a several election (Morrell v. Irving Fire Ins. Co., 33 N. Y. 429, 454, 88 Am. Dec. 396; Good v. Buckeye Mut. F. Ins. Co., 43 Ohio St. 394, 2 N. E. 420; Hartford Fire Ins. Co. v. Peeples' Hotel Co., 54 U. S. App. 215, 82 Fed. 546, 27 C. C. A. 223), or they might have concluded to join; with neither of which the plaintiff had any right to interfere (Beals v. Home Ins. Co., 36 N. Y. 522).

Let judgment be entered in favor of the defendants non obstante veredicto on the reserved point, with costs.