## PATTERSON & CO. v. ROBINSON BROS.

(Circuit Court, M. D. Pennsylvania. February 3, 1908.)

No. 33, October Term, 1905.

1. ARBITRATION AND AWARD—ACTS OF PARTIES—INEFFECTIVE ARBITRATION.

Where, as part of a sale of clay works, defendants agreed to take manufactured pipe on hand at specified prices according to certain grades, and, in case of a disagreement as to the grades, arbitrators were to be appointed to determine the matter, any material interference with or disposition of the pipe by defendants by which an arbitration was rendered ineffective would relieve plaintiffs from the necessity of attempting an arbitration as a condition precedent to their right to sue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Arbitration and Award, § 30.]

2. SAME—QUESTION FOR JURY.

Where the evidence of defendants' acts was not such that the court could declare as a matter of law that they absolved the plaintiff from the duty to have the grades of certain sewer pipe in question determined by arbitration, and there was no request that the court should determine such question as a matter of law, whether such acts were such as to render any arbitration attempted ineffective was properly submitted to the jury.

3. SAME—DESTRUCTION OF PIPE—QUANTITY.

Where a contract for the sale of sewer pipe in connection with a clay works plant provided for an arbitration to determine the grade of the pipe, plaintiff, while entitled to have the pipe kept intact and undisturbed as it lay at the works, if it was to be appraised by the arbitrators, was not relieved of the duty to participate in such arbitration by the fact that defendants destroyed an immaterial part of the pipe which by no possibility would have come up to the required grades.

4. SAME.

Where, in a suit on a contract for the sale of certain clay works and sewer pipe, defendants relied on provisions for arbitration as to grades of the pipe with which plaintiffs had not complied, as a defense, the court did not err in modifying a request to charge that the burden was on defendants to show that the failure to choose arbitrators was "entirely" the fault of the plaintiffs and not in any way the fault of the defendants, by striking the word "entirely."

5. CORPORATIONS—CONTRACT BEFORE INCORPORATION—ACTIONS—INSTRUCTIONS.

Where, after the sale of clay works and manufactured sewer pipe under a contract providing for arbitration as to the grade of the pipe, defendants transferred the plant to a corporation organized by them to operate it, and thereafter certain of the correspondence between the parties was signed by the corporation, and the plaintiff never objected to dealing with the corporation instead of the defendants until at the trial, the court properly charged that the jury should regard the notices signed by the corporation the same as if they were signed by the defendants.

6. NEW TRIAL—OBJECTIONS NOT RAISED AT TRIAL.

Where, in a suit on a contract for the sale of clay works and sewer pipe, defendants urged as a defense that plaintiff had failed to perform an arbitration agreement to determine the grades of the pipe, and plaintiff at the trial insisted that a transfer of the works by defendants to a corporation did not relieve defendants from the provisions of the contract with reference to arbitration, but that plaintiff had been relieved by defendants' acts in destroying and disposing of certain of the pipe, plaintiff was not entitled to assert for the first time on an application for a new trial that defendants' transfer of the works put it out of their power to have the pipe appraised, and therefore relieved plaintiff from the arbitration agreement.

At Law. Rule for a new trial.

T. C. Hipple, for the rule.

C. La Rue Munson, opposed.

ARCHBALD, District Judge. Incident to a sale made by the plaintiffs to the defendants of the Lock Haven Clay Works, it was agreed by the defendants that they would take all the manufactured pipe on hand, paying a certain price for No. 1. and another price for No. 2, which is of less value. These are two well-established grades of sewer pipe, and cover everything in that line which is considered marketable; pipe which is neither No. 1 nor No. 2, while sometimes used for farm drains and the like, having no commercial rating. This suit is for the price of the pipe so claimed to have been sold. The defense is that there was none of either of the grades called for; and that whether there was or not, in case of a disagreement, was to be left to arbitrators; as to which it was specifically provided in the contract of sale that, upon a disagreement between the parties as to the grade of the pipe, it should be settled, by each party selecting an arbitrator, and the two so chosen appointing a third, whose decision should be final. The works were sold in December, 1901, and, the defendants having assumed possession, the preliminary steps were taken to determine to what extent the pipe came up to the standard, but it never got beyond that. Each party promptly named one of their own number to represent them, who almost immediately fell apart as to the quality of the pipe, and were equally unable subsequently to agree upon an umpire. A number of names were suggested, and one man, Mr. C. M. Bechtel, was acceptable to both sides, but unfortunately he declined to act, not being willing to be drawn into the controversy, and they did not get together upon any one afterwards. The jury were instructed that, as a condition precedent to a recovery, it was necessary that the pipe should be appraised in the manner provided by the contract, if it was reasonably possible to accomplish it, and that only in case the plaintiffs made a proper effort to bring this about, and the failure to secure it was not chargeable to them but to the defendants, could they maintain this action. The verdict was in favor of the defendants, the jury putting it upon the specific ground that these requirements had not been complied with. It is now urged, in avoidance of this conclusion, that as an appraisement involved a physical inspection, by breaking up as well as disposing of a large quantity of pipe, as it is said they did, the defendants dispensed with the necessity for it, and made themselves liable without reference to it.

It is no doubt true that any material interference with or disposition of the pipe in the way suggested, by which an arbitration was rendered ineffective, would relieve the plaintiffs from the necessity of attempting it. Astrich v. Insurance Co. (C. C.) 128 Fed. 477; Id., 131 Fed. 13, 65 C. C. A. 251. And there was evidence as to this from which the jury could have found in the plaintiffs' favor. But it was not undisputed, nor was it so preponderating that the court could declare them absolved as a matter of law. Nor was there indeed a request that the court should do so. As was thus recognized, the ques-

tion was therefore for the jury under proper instructions, and the only thing to be considered now is the correctness, in this respect, of the charge which was given.

It is to be observed, as to this, that not only was the jury told in the general charge that if a material part of the pipe was broken up or taken away, which would possibly grade up to the required standard, the plaintiffs would be relieved from the necessity for an arbitration; but also, in answer to the plaintiffs' second point, it was specifically declared that, if the defendants intended to rely on the stipulation for an arbitration contained in the contract, they had no right to break, sell, or otherwise dispose of or remove, the pipe and fittings, or at least any material part of them, which by any possibility could be regarded as within the two grades mentioned, before the same had been duly appraised and graded, and the quantity of each grade ascertained by the arbitrators provided for; and that, if they did so break or dispose of the pipe, they could not avail themselves of the provision for an arbitration, at this time, but were liable for as much No. 1 or No. 2 pipe as was in the yard at the time of the consummation of the sale, as shown by the evidence. While then, on the one hand, the jury were told that an arbitration was necessary, as called for by the contract, and that the plaintiffs could not recover unless the provision for it failed without fault of theirs; they were also advised, with equal explicitness, if not to the full extent asked for, that this was not required, if there was a breaking up or disposal by the defendants of any material part of the pipe, which by any possibility would grade up to the standard specified.

It is said, however, that the plaintiffs' point should have been squarely affirmed, without any qualification, a material part of the pipe having to be broken up, according to the charge, in order to relieve the plaintiffs from the effect of the stipulation; whereas they were entitled to have the pipe kept absolutely intact and undisturbed, as it lay at the works, if the provision for an appraisement was to be insisted on. This is no doubt true, but the destruction of an immaterial part of it would surely be of no consequence, which is the sense of the instruction, putting it in the alternative. And the same is to be said of the breaking or disposal of pipe that by no possibility would come up to the grades in question. The extreme character of these qualifications is not to be lost sight of. It may be that they were unnecessary, and that the point could have been well affirmed without them. But they served to caution the jury, as they were intended, that the breaking up or disposal of an inconsiderable portion of the pipe, or of such of it as under no circumstances could be of any consequence, was not enough to avoid the express stipulation for an appraisement. As the whole character of the pipe at the works was left open by reason of there being no appraisement, it cannot be said that the plaintiffs were prejudiced by what was so said. Nor was it a begging of the question, nor a making of the defendants judges in their own cause, as it is charged, even though it may have been for the arbitrators to declare, after an inspection of the pipe, as to the character of each and every part of it which the breaking or disposal of any of it to such extent prevented. That some pipe had been broken up and some removed—although not

159 F.—20

by the defendants—was not disputed. But material provisions of a contract are not to be avoided by inconsequentials, and unless we are prepared to hold that the breaking up or removal of any of the pipe, whether material in character or quantity, absolved the plaintiffs from the necessity for an appraisement of it, there can be no just criticism of the caution introduced in these instructions.

. But complaint is also made that the plaintiffs' third point was unduly qualified. "Defendants having set up the stipulation for arbitration * * * as a defense," as the point suggests, "the burden of proof is on them to show by competent evidence, to the satisfaction of the jury, that the failure to choose arbitrators was entirely the fault of the plaintiffs, and not in any way the fault of the defendants." Striking out the word "entirely," as possibly too strong an expression, this was declared by the court to be a correct statement of the law. It may be that it would have been just as well to have affirmed the point as it stood. But even if that be so, the change could not have worked any detriment. With this word eliminated, the jury were still instructed that, in order to avail themselves of the stipulation in question, the defendants were bound to prove that the failure to choose arbitrators was not only the fault of the plaintiffs, but not in any way the fault of the defendants, which was equally effective. It got before the jury in full force that the fault must not be mutual, but be attributable to the plaintiffs to the entire absolution of the defendants, which is all that was or could be asked, or that is now contended for.

Nor am I persuaded that any mistake was made as to the instructions given with regard to the transfer of the plant by the defendants to the Lock Haven Sewer Pipe Co., which was organized by the defendants to run it, and by whom one or two of the communications were signed, which passed between the parties. The jury were advised that the defendants could not shift their responsibility, or avoid the stipulation with regard to an appraisement, in any such way; which is of course not objected to. But complaint is made of the suggestion to the jury, in answer to the plaintiffs' fourth point, that they should regard the notices signed by the Lock Haven Sewer Pipe Co. the same as if they had been signed by the defendants. That they were so intended and understood, there can be no question. Nor were the plaintiffs in any respect misled by them. The only one of any importance in this connection is that of March 7, 1902, in which certain parties were nominated to act as the third arbitrator. Neither of them was apparently acceptable to the plaintiffs, but, in declining to agree to them and suggesting others, no question was made that the communication did not come from the proper source. Nor, indeed, as to either of the papers referred to was it ever objected, except at the trial, that they were signed by the Sewer Pipe Co. rather than by the defendants, it being clearly understood by everybody that the one was the representative of the other on the ground.

It is said, however, that by the transfer of the works to the Sewer Pipe Co. the defendants put it out of their power to have the pipe appraised, thus doing away with the necessity for it. But this is evidently a mere afterthought. No such contention was made by the plaintiffs at the time, and the efforts, such as they were, to agree upon a third

arbitrator, show that they had no such idea of it. Nor was this position indeed taken at the trial, the only point made being, as just stated, that the transfer did not relieve the defendants from the provisions of the contract with regard to an arbitration, which is altogether different from holding that it was thereby entirely abrogated.

This is all that needs to be said in disposing of the present rule. The jury having based their verdict on the failure of the plaintiffs to make a proper effort to agree on a third arbitrator, all other questions were thereby eliminated, and the rulings of the court with regard to them, whether correct or otherwise, become immaterial. Finding no occasion, therefore, for disturbing the verdict, the rule for a new trial is discharged.