ASTRICH v. GERMAN-AMERICAN INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Third Circuit.   July 5, 1904.)

No. 61.

1. FIRE INSURANCE—CONDITIONS—VIOLATION AFTER LOSS—UNDESTROYED PROPERTY—SALE.

One of several policies insuring plaintiff's merchandise to the extent of actual loss provided that in case of disagreement as to the amount of loss the same should be ascertained by an appraisement, and that the loss should not be payable, or an action maintained to recover the same, until after 60 days after due notice, ascertainment, estimate, and satisfactory proof of loss had been received by the company in accordance with the terms of the policy; that the insured, as often as required, should exhibit to any person designated by the company all that remained of any property described in the policy, and should submit to examinations under oath, and produce books of account, etc., and that it should be optional with the company to take all or any part of the articles at such ascertained or appraised value, and to replace the property lost or damaged with other of like kind or quality at any reasonable time within 30 days after the receipt of proofs of loss or the giving notice of his intention to do so.   After loss the property was separated as required, and, the parties failing to agree, insured, after filing, but before the receipt of proofs of loss by the insurers, and over their protest, advertised and sold the property remaining.   *Held*, that such sale deprived the insurers of their substantial rights to further examination of the goods after proof of loss furnished, to adjust the loss by appraisement, and to replace the goods damaged with other goods of like character, and therefore precluded a recovery on the policy.

2. SAME—WAIVER—APPRAISERS—AUTHORITY.

Where plaintiff, having several policies, some of which insured both merchandise and fixtures and others insured fixtures only, had a conversation with one of the adjusters of the companies in interest after loss and after a forfeiture as to the merchandise had been incurred, in which such adjuster requested plaintiff to furnish proofs of loss as to the fixtures and furniture, such request, though complied with by plaintiff's sending such proof to all of the insurers, did not operate as a waiver of the forfeiture as to the merchandise insured by an insurer whose policy covered merchandise only.

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 128 Fed. 477.

C. H. Bergner, for plaintiff in error.

Cyrus G. Derr, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.   The suit in the court below was an action of assumpsit, on a policy of fire insurance.   The plaintiff in error, who was the plaintiff below, was the proprietor of a large store in the city of Harrisburg, Pa., wherein he conducted a retail business in ladies' millinery, coats, furs, and furnishing goods.   His stock of merchandise was insured for $22,000, in 13 companies, and his fixtures and furniture for $2,500 in certain of the said 13 companies. The German-American Insurance Company, the defendant, was one

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1292.

of the companies which insured merchandise, and the amount of its policy was $4,500. Some of the other companies insured both merchandise and furniture and fixtures, the latter being contained in a clause in the policy separate from the clause by which the merchandise was insured. A fire occurred in the storeroom of the plaintiff, December 16, 1902, by which the building was considerably burned, and the entire stock of merchandise was either destroyed or injured, and the furniture and fixtures damaged.

The policy of insurance, upon which suit was brought in the court below, was issued by the defendant company to the plaintiff. It is in the usual form, and insured the plaintiff in the sum of $4,500, for the term of one year, against all direct loss or damage by fire, except as therein provided. Among the exceptions, stipulations and conditions attached to said policy, those having any bearing on the present case are as follows:

"1. This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for (2) depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company, to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do.

*　　*　　*　　*　　*　　*　　*　　*　　*

If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged goods, personal property, put it in the best possible order, make a complete inventory of the same, stating the quality and cost of each article and the amount claimed thereon; and within sixty days after the fire, unless the time is extended, in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property; the cash value of each item thereof and the amount of loss thereon," etc.

*　　*　　*　　*　　*　　*　　*　　*　　*

The insured, as often as required, shall exhibit to any person designated by this company, all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

In the event of disagreement as to the amount of loss the same shall as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the

parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.

    ⁂      ⁂      ⁂      ⁂      ⁂      *      ⁂      *      *

No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.

    ⁂      ⁂      ⁂      *      *      ⁂      ⁂      *      *

This policy is made and accepted subject to the foregoing conditions and stipulations, together with such other provisions, agreements, or conditions as may be indorsed hereon and added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

At the trial, after testimony on both sides had been submitted to the jury, the court instructed the jury that its verdict should be taken, subject to a reserved point, which was read. Accordingly, the verdict of the jury was rendered in favor of the plaintiff for $4,300, with interest, subject to the point reserved, which was as follows:

"It being the undisputed evidence that the plaintiff's stock of goods was insured to the extent of twenty-two thousand dollars ($22,000) in thirteen (13) different companies, of which the defendant was one, the insurance in such company being $4,500; that a fire occurred on December 16, 1902, during the life of the said policy, by which a large part of the said stock was entirely consumed and other parts damaged by fire, smoke and water; that immediately after the fire the plaintiff put in order the stock that was left, separating the damaged from the undamaged goods; that on December 29th and 30th, after due notice, agents and adjusters representing the said several insurance companies, including the defendant, went upon the premises and investigated the loss, and, for the purpose of ascertaining the extent of the same, examined the books, bills and accounts of the plaintiff, carefully and thoroughly, and inspected the damaged and undamaged stock, being occupied in such examination more or less for two (2) days; that as a result of the same they collectively offered, on behalf of all the said companies, to pay the plaintiff in settlement of his said loss the sum of twenty-two thousand dollars, the aggregate amount of his insurance, the said companies to take the stock which remained and wreck the same—that is to say, ship it to New York or some other general market and there have it put in order by persons experienced in such business, and then and there sell it by auction or otherwise for such price as it would bring, the plaintiff to receive all that it brought up to five thousand dollars, after deducting expenses, and the insurance companies to receive the excess above that sum; which offer the plaintiff refused; and that the said agents then and there made a further offer to pay the plaintiff in settlement of his said loss, the sum of $17,500, he retaining for his own benefit the said stock on hand; which offer the plaintiff also refused; that thereupon he was told by the said agents to read his policy and observe its terms, on which the parties then and there separated; that, afterwards, the plaintiff made out due proofs

of loss, which he forwarded to the defendant company on January 9th following, which were duly received by said company; that on January 8th, the day before he furnished said proofs, after first having advertised the stock for sale, the plaintiff, without notice to said companies, began to make private sale thereof and continued to sell the same for the three days next following, until the said goods were disposed of, realizing therefrom the gross sum of about sixty-two hundred dollars ($6,200) and being at the expense of about two thousand dollars ($2,000) in so selling them; that the insurance companies, including the defendant, having learned that such sale was about to be made, notified the plaintiff, by telegram and letter, that he should not dispose of the said goods, that they desired to exercise the rights given them by the policies of insurance which he held of further examining said goods to determine their value and the loss or damage sustained thereon, and calling attention to the fact that the said companies had the right if they desired to, to take the stock, or in case of disagreement as to the extent of the loss to have the same determined by appraisement; and thereupon notifying plaintiff that if he proceeded with the sale, his policies would be rendered null and void; and that notwithstanding such notice the said plaintiff proceeded to make sale of the said goods.

Whereupon, in view of the provisions of the policy in suit, a copy of which is attached to plaintiff's declaration of statement, and is made a part of this point, the question of law is reserved.

Whether the policy, by reason of the said sale so made by the plaintiff, was avoided and whether the plaintiff is entitled to recover thereon in this action; with leave to the Court to enter judgment in favor of the defendant, notwithstanding the verdict if it be found that such is the law."

Motion for judgment for defendant, non obstante veredicto, was accordingly made, and after argument, the court granted said motion, and gave judgment in favor of the defendant on the point reserved.

In considering the questions raised upon the assignments of error, we first advert to the general contention of the defendant, that the insured, by his conduct in advertising and effecting a sale of the damaged goods before the proofs of loss required by the policy of insurance, which he had made out and forwarded to the defendant company, had been received by it, forfeited his right to claim indemnity under said policy. It will be seen, by reference to the paragraphs of the policy heretofore quoted, that there is an express stipulation between the insurer and insured, that in case of disagreement between them, as to the amount of the loss, the same should be ascertained by an appraisement of disinterested appraisers, selected by the parties respectively, and that the loss shall not become payable until sixty days after the same shall have been so ascertained. There is also a stipulation that the insured, as often as required, shall exhibit to any person designated by the company, all that remains of any property described in the policy, as well as submit to examinations under oath, and produce books of account, etc. The insurance contract also provides that it shall be optional with the company to take all or any part of the articles at such ascertained or appraised value, and also to replace the property lost or damaged with other of like kind and quality, at any reasonable time within thirty days after the receipt of proof of loss, on giving notice of his intention to do so.

We agree with the court below, that the right under this policy to an appraisement was absolute, if the insurers found that they

desired it. It was essential to the enjoyment of this right that the damaged stock should be retained by the insured, where it could be examined for the purpose of appraisement. It was in evidence, and not disputed, that there had been, a short time prior to the sale, an effort of the parties to ascertain and amicably settle the loss between them, and that serious differences had existed while this attempt to settle was in progress, and that it had finally been abandoned, with a notice to the insured, that the company would stand upon the terms of its policy. The provisions of the policy, repeated in two different places, are express, to the effect that, in the event of disagreement, and failure amicably to settle the loss between the parties, the right to an appraisement shall accrue, and we fail to see anything in what occurred between the parties, while the efforts to settle were in progress, to impair or at all affect the right of the insurer in this respect. The fire occurred on December 16, 1902. It is true, that due notice of the same was given by the insured to the company; that the insured, under the direction of the agents of the insurance companies, had separated and arranged the goods that were not totally destroyed, for quick and careful examination; that the adjusters of the insurance companies came to the insured premises, and examined the damaged goods on the 29th and 30th of December, and after an examination of the said goods and books of the insured, and making inquiry of the insured himself, made three offers to pay certain sums of money, in full settlement of liability; that on making the last offer to settle the liability of all the companies, by the payment of a lump sum of $17,500, it was said by the adjusters that such offer was the last and final one, and that, it being refused, the adjusters departed. It is true, also, that there was testimony that the goods damaged were deteriorating in value and condition, and that after the final offer on December 30th, the insured expended money and trouble in preparing and advertising the goods for sale, and that the season in which a large number of the goods which had been damaged could be used, or were salable, was nearly ended.

There is nothing, however, in any of these facts, taken singly or together, that in our opinion, has any bearing upon the right of the insuring company, under the circumstances, to an appraisement. They disclose only what seems to be the not unusual situation, when such a settlement between the parties is attempted. Three several offers of payment, in full settlement of the companies' liability, were made and rejected. The statement, that the offer last made was a final one, seems to us only to have made clear the necessity for an appraisement. The fact that the goods were deteriorating, and that the time in which they were salable was passing by, are circumstances inhering in the situation, but of no possible effect as to the right to an appraisement, and could in no way justify the action of the assured in destroying all opportunity for the enjoyment of that right. Nor does the fact, if fact it be, that one of the adjusters told the insured, in the presence of the other adjusters, that there was no use in making the appraisement of the damaged goods, because the in-

sured would not fix the value of the goods burned out of sight, have any such relation to the right of appraisement, as to have made it necessary or proper for the court to have incorporated the same in the statement of the point reserved. It is in evidence that there had been an effort on the part of the adjusters to induce the insured to value the goods burned out of sight, as a basis for their adjustment, and the remark of the adjuster, that without such valuation, there was no use in appraisement, was persuasive to that end. There is no evidence, however, that the one making the remark was authorized by the defendant to dispense with an appraisement, or to forego any right in that respect possessed by it. Nor could the fact, that the damaged goods were inspected by the adjusters on December 29th and 30th, have warranted the insured in considering an appraisement to have been dispensed with by the company. This inspection was a usual precaution taken by the agents of insuring companies, to ascertain facts for themselves connected with the loss, and in this case, was expressly preliminary to the effort made to reach an amicable adjustment. As said by the court below:

"When it failed, and the parties fell apart, they were remitted to their several rights, which each side was bound to respect and observe. Recognizing this, the plaintiff drew up and forwarded his proofs of loss, on the receipt of which the insurers were entitled, if they found it necessary, to require a new exhibition of the damaged goods, just as they had the right to call for his books and papers, or to demand that he should submit to an examination under oath."

Founded upon this right to an appraisement, there was another right of the insurer under the policy, and of which it was deprived by the action of the defendant in the sale and dispersion of the damaged goods. This was the option already alluded to, reserved to the company, "to take all or any part of the articles at such ascertained or appraised value * * * or replace the property lost or damaged with other of like kind and quality, within a reasonable time, on giving notice within thirty days after the receipt of the proof herein required, of its intention so to do." Clearly this right could only be enjoyed, where there had been, either an amicable ascertainment of loss or an appraisement, as provided for in the policy, and where opportunity was given within thirty days after the receipt of the proof, to examine the goods damaged. The plaintiff made out due proofs of loss, and forwarded the same to the defendant company, on January 9th. This notice could not have been received until the day following, when all the goods had been sold at private sale and irretrievably dispersed. The plaintiff, having by his own act destroyed those unequivocal rights reserved in the policy to the insurer, cannot now be heard to complain of a forfeiture of his own claims under a policy containing the express stipulation, that "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity, until after full compliance by the insured with all the foregoing requirements." Nor can the plaintiff allege that he was suffered to rest under any misunderstanding as to the attitude of the company, as evidenced by what took place on the 29th and 30th of December, when the goods were being

examined by the adjusters and efforts were being made to amicably settle the loss, or that there was a silence on the part of the insurers, when they ought to have spoken. In regard to this point, the record discloses, that on January 6, 1903, plaintiff advertised his damaged goods for sale on the 8th, 9th and 10th of said month, and on January 7, 1903, the adjusters for the companies in interest, wrote the following letter, received by the plaintiff before the said sale commenced:

"Philadelphia, January 7, 1903.

Mr. Herman Astrich, Harrisburg, Pa.

Dear Sir: From information received, we believe that you have by public advertisement, and otherwise, stated your intention to dispose of by sale, commencing January 8, 1903, stock damaged by fire December 16, insured in this and other companies. We desire to call your particular attention to the conditions contained in your policies of insurance which constitutes the contract between said companies and yourself. Under the same it is the right of said companies to continue to make an examination of said property, with the privilege on their part, if they desire, to exercise the option, to take said stock, and also by reason of disagreement between you and said companies as to the amount of loss and damage sustained, to have that matter determined by appraisement. We now notify you that we have arranged to examine said stock Monday, January 12, to determine, if possible, the value, or damage, sustained, and if the contemplated action on your part is effected, it will be in direct violation of the rights possessed by said insurance companies, and the said policies of insurance will be thereby rendered null and void by you.

Reserving all legal rights and waiving none, we are,
Yours truly,          G. A. Russell,
                      William H. Whitall,
                      Adjusters for Companies in Interest."

We think, therefore, that under the facts shown, there was clearly a forfeiture of the plaintiff's right to claim indemnity under the policy sued upon.

But the plaintiff contends, that, granting forfeiture, testimony was offered by him, tending to show conduct on the part of the insurer, from which the jury would be justified in inferring a waiver of the said forfeiture. The rejection of this testimony is the ground of the first assignment of error, which is as follows:

"(1) The court erred in the rejection of the evidence of Herman Astrich, a witness for the plaintiff, contained in the offer made by the plaintiff, as follows:

By Mr. Bergner: Mr. Derr, are you claiming that this policy was forfeited because of the sale of the goods?

By Mr. Derr: Yes.

By Mr. Bergner: I propose to show by the witness upon the stand that there was an insurance upon the merchandise and also upon the fixtures, cases, etc., in this building; that by certain policies the fixtures and merchandise were insured in separate items; that on the 12th day of January, Mr. W. H. Whitall, an admitted agent of the defendant company, came to Mr. Astrich's place of buiness, and, after inquiry of him concerning the sale of goods referred to, demanded that he furnish proofs of loss and schedules of the furniture and fixtures destroyed in this case; this for the purpose of showing waiver of the alleged forfeiture claimed by defendant; to be followed by evidence that Mr. Astrich complied with the demand at considerable expense and sent the proofs of loss."

It is true that courts do not favor forfeitures, and are liberal, according to circumstances, in finding a waiver. This is true especially where

there is ground for imputing bad faith in the conduct of one party towards the other, who has incurred the forfeiture. In the case before us, there is no question of bad faith. It is solely a question of fact. Did the evidence offered tend to show satisfactorily that the defendant company intended to waive the forfeiture incurred by the plaintiff, through his noncompliance with the conditions of the policy? If it did not, there was no waiver, and the plaintiff was not justified in acting upon it as if it were a waiver. A waiver is a voluntary relinquishment of the right that one party has in his relations to another. Such waiver may be either express or implied. An express waiver is governed by its own terms, takes care of itself, and is not often the occasion of dispute or litigation. An implied waiver, of a forfeiture for instance, is where one party has pursued such a course of conduct, with reference to the other party who has incurred the forfeiture, as to evidence an intention to waive the same, or where the conduct pursued is inconsistent with any other honest intention, than an intention to waive the forfeiture, and the one who has incurred the forfeiture has been induced by such conduct to act upon the belief that there has been a waiver, and has incurred trouble and expense thereby. There is no confusion about the rules of law, applicable to this question. They are founded upon fundamental rules of evidence, and upon the obligations of morality obtaining in human affairs. It is essentially a matter of intention, though circumstances may sometimes be such that the real intention is immaterial, and the question is, whether a party is not estopped by conduct evidencing an intention upon which another has acted, to say what his true intention really was. In such cases, the ordinary and well-understood doctrines of estoppel by conduct is applicable. We think, in the case before us, the learned judge of the court below was right in rejecting the offer of testimony above stated. Whitall, the adjuster who made the request that the plaintiff should send in proofs as to the loss of furniture and fixtures to all the thirteen companies, was not the special agent of the defendant company. He had appeared as one of the adjusters representing all the companies at the first investigation of the loss, and there was no offer of testimony to enlarge his agency for the defendant company, "so as to make it include so extraordinary an act as that of demanding proofs as to property not embraced in the defendant company's contract, and in which the defendant was not concerned." Some of the 13 companies represented by the adjusters, had included in their policies a separate insurance on furniture and fixtures, and some did not. In the latter class was the defendant company. This the plaintiff was bound to know, and therefore bound to know that the request by Whitall, for a statement of loss as to furniture and fixtures for the defendant company, was that he should do a thing totally unrelated to his contract with that company, and one that could have no possible bearing upon the attitude of that company, with reference to the loss on the merchandise, or its liability therefor. The request, therefore, was not only unauthorized, but was totally irrelevant to the business in hand between the plaintiff and defendant. How, then, could an intention to waive, be inferred from such a request, and how could the plaintiff

have been induced to believe, by such request, that the defendant company intended to waive the forfeiture it had the right to claim? What actually happened, doubtless, was that the adjuster, in asking for a statement of loss as to fixtures and furniture to be sent to the companies insuring the same, by mistake included the defendant company with the other insuring companies, most of whom had insured furniture and fixtures. It would work injustice, and not justice, to hold that this mistake, for which the company was in no way responsible, and by reason of which the plaintiff is alleged to have incurred the trifling trouble and expense of sending a copy of its statement of loss on fixtures and furniture to the defendant company, who it was bound to know had no insurance thereon, relieved the insured from a forfeiture occasioned by his disregard of the stipulations of the insurance contract. It is to be noted, that the offer was, not that the defendant company demanded the proof as to furniture and fixtures, nor that Whitall, an agent authorized by the defendant to demand proofs as to furniture and fixtures, had demanded such proofs, but, simply that Whitall, "an admitted agent of the defendant company," made the demand. The fact that the defendant company had made no such demand, and that Whitall was not authorized by the defendant company to make such a demand on its behalf, being uncontroverted, we think the learned judge of the court below was right in rejecting this offer of testimony, and also in deciding the point reserved in favor of the defendant.

The judgment of the court below is therefore affirmed.