BAKHAUS et ux. v. GERMANIA FIRE INS. CO.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1910.)

No. 906.

1. INSURANCE (§ 336*)—FIRE INSURANCE—POLICY CONDITIONS—OTHER INSURANCE—REASONABLENESS.

A condition against other insurance, unless with the written consent of the original insurer, is reasonable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 856–873; Dec. Dig. § 336.*]

2. INSURANCE (§ 397*)—FIRE INSURANCE—CONDITION AGAINST OTHER INSURANCE—WAIVER.

Where insurer had no knowledge of a breach of a condition against other insurance until after loss, the fact that its general agent employed an expert adjuster to investigate the facts surrounding the fire, and that he requested the state fire marshal to investigate the fire according to his official duty and participate in such investigation only so far as to enable him to determine whether such loss was an honest one, and, not being requested to inform insured as to his conclusion, simply stated that "you will hear from me," his employment by insurer and his conduct did not amount to a waiver of a breach of such condition.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1078–1082; Dec. Dig. § 397.*]

In Error to the Circuit Court of the United States for the District of Maryland, at Baltimore.

Action by John Bakhaus and wife against the Germania Fire Insurance Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

S. S. Field (William F. Pirscher, on the brief), for plaintiffs in error.

W. Calvin Chesnut (J. Morfit Mullen and Gans & Haman, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BRAWLEY and CONNOR, District Judges.

BRAWLEY, District Judge. This is a suit upon a·policy of fire insurance of the ordinary New York standard form, in the amount of $3,000, issued September 10, 1907, to run for three years, covering six partially completed frame houses, all under one outside wall, with interior partitions, in Anne Arundel county, just outside of the city of Baltimore. In November, 1907, plaintiffs secured $1,200 additional insurance on the houses in the Caledonia Fire Insurance Com-

pany. The fire occurred January 18, 1908. The testimony of an experienced builder valued the houses, in the condition in which they were when burned, at $3,044.29, and, valuing the excavations and concrete foundations at $325, places the loss at $2,719.29. One of the conditions of the policy against other insurance is as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The validity of such a clause is the subject of review by the Supreme Court of the United States in Northern Assurance Company v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, where the court says:

"Over insurance by concurrent policies, on the same property, tends to cause carelessness and fraud, and hence a clause in the policies rendering them void in case other insurance had been or shall be made upon the property when not consented to in writing by the company, is customary and reasonable."

It appearing that no consent to such other insurance was ever indorsed on this policy, or added thereto, no question is made before us denying that the insurance in the Caledonia Fire Insurance Company avoided the policy, and the only question to be considered is whether the above-cited condition in the policy was waived, the contention of the plaintiffs in error being that, after knowledge of its right to declare the policy forfeited, Rolker, the defendant's general agent, recognized the continued existence of the policy. It is not claimed that there was any express waiver, but that the acts of the defendant were inconsistent with an intention to insist upon a forfeiture of the policy, and required affirmative acts from the plaintiffs, putting them to trouble and inconvenience. The testimony is that Rolker, the general agent of the defendant company, received verbal notice of the fire from the son of the plaintiffs on the morning of January 20th, and on the same afternoon Price, representing the Caledonia and other companies, called on him and told him about the policy in the Caledonia, and that this was the first information he had that plaintiffs had other insurance on these houses, and after some conversation with Price they determined to place the matter in the hands of Bond, an independent fire insurance adjuster. Bond's testimony as to the instructions given him by Price and Rolker is as follows:

"These gentlemen came down there and said that they each had a policy; neither of them are gentlemen who employ me ordinarily. They said: 'We want you to take this up and look into it, because there is no permission for other insurance on this thing, and we want it carefully attended to.' "

In reply to a question as to whether they told him to adjust the loss, he said:

"I cannot say they absolutely used the word 'adjust'; they may have said, 'talk it over with us,' or something of that sort."

Rolker's reply to the question as to what instructions he gave to Bond is as follows:

"The usual instructions; I simply told Mr. Bond that the loss had been reported to my office on the six houses, and that we wished him to look after our interests in the matter."

On the day following Bond went out to the site of the fire in company with Brooks, who had placed the insurance for the Caledonia Company, and Deming, who it appears had issued a policy upon the furniture. Bakhaus was not there, but met the parties named as they were returning to Baltimore, and was told to come up next day to Deming's office, where he says he found Deming, Bond, and Deming's son, and was asked about the fire, when Deming told him to make up a list of the furniture that was burned, and Bond said, "You will hear from me further." Bond testifies that he was not at Deming's office at the time stated; that he never met Bakhaus but twice, once in the state fire marshal's office, and once in his own office, about March 26th. On January 24th the state fire marshal, at the request of Bond, began an investigation of the burning of the plaintiffs' houses. In the course of such examination Bakhaus was called by the fire marshal, and questioned by him; he was not put under oath. Bond was present and asked some questions. Bakhaus testified that after such examination he asked Bond what he was going to do, and he replied that, "I would hear from him." The state fire marshal is a public official of the state of Maryland, whose duty it is to investigate suspicious fires. A letter of Bond to the defendant company was offered in evidence by the plaintiffs, and is as follows:

"March 28, 1909.

"Germania Fire Insurance Company, New York City, N. Y.

"Dear Sirs: Referring to my letter of January 29 in regard to claim of John Bakhaus and wife under policy No. 97692, I beg to say that no proofs of loss have been filed in this case, although the time expired on the 19th inst., and that the assured had made no claim other than the first notice given of the loss; nor have I seen him except once, when he was in the office of the fire marshal when he was under investigation, and once within a few days, when he asked me if I had anything to say to him, in reply to which I said that I had not.

"I have endeavored to consider this matter in all its phases, giving the assured the benefits of all doubts, but I am unable to come to any conclusion but that the assured, being deeply in debt, having failed in this building speculation, and having no hope whatever of escape, except by the assistance of the insurance companies, having an opportunity, used it. As your policy contains no permission for other insurance, and the provision in lines 11 and 12 that 'it shall be void if the insured now has, or shall hereafter make or procure any contract of insurance. whether valid or not, on property covered in whole or in part by this insurance.' As the assured has furnished no proofs of loss within 60 days required in the policy, the legal question is eliminated, and the whole matter narrows down to one of moral obligation. As I am satisfied that there was both fraud and crime in this case, I do not hesitate to advise that you should deny liability, and will thank you to inform me at your earliest convenience so that I may give proper answer to the assured when he next calls on me.

"Since dictating this letter I have been called up by Mr. Rosenbush, who stated that he is the attorney for Mr. Bakhaus, and asked me to explain to him why we had not paid the loss. I replied that I had just written the companies on the subject, and on receipt of their replies will communicate with him.

"Yours truly,                                    Thos. E. Bond, Adjuster."

176 F.—56

This is substantially all the testimony tending to show a waiver of that condition of the policy which renders it void in case of additional insurance, and it consists in the reference of the case to Bond, the insurance adjuster, by Rolker, the general agent, after the fire and after he had knowledge of the additional insurance, and in the conduct of Bond. An adjuster's business is to ascertain the loss and adjust the amount. Beyond that, as a general rule, he has no duty to perform or power to act, and it is doubtful that an agent of such limited power has any authority to waive an essential condition of the contract, but it is not needed in this case to make any critical examination of authorities upon the powers of agents of this class, for there is nothing in the conduct of Bond from which may be implied any relinquishment of a known right, nothing which tended to mislead the insured to his prejudice, or lull him into a false security with respect to his rights.

The testimony does not show that Bond had any communication with the insured except to say "you will hear from me." If this had been said after the discovery of the over insurance and before the fire, it might have been argued with some plausibility by the insured that: If you had notified me of the company's intention to insist upon the forfeiture, it would have been in my power to protect myself by other insurance, and it might be claimed that the insured was misled to his prejudice into believing that the company, with full knowledge of the facts, would not insist upon the forfeiture. Mere silence continued for an unreasonable length of time might be considered as some evidence of the intention of the company to waive its rights. So, too, where the insurer, knowing of the other insurance, sent its adjuster to the insured, stating that the company would pay the loss, and the insured was thereby induced to compromise with the other insurance company, this was held sufficient to justify a jury in finding a waiver by the insurer of the breach of the condition; but there are no such facts in the case at bar. All that appears in the testimony, all that can be lawfully inferred from it, is that the general agent of the company, after the fire, when for the first time he learned that there was other insurance which avoided the policy, placed the matter in the hands of an experienced adjuster to investigate the facts surrounding the fire. It appears from the testimony that insurance companies do sometimes waive legal defenses under their policies and pay losses when they are satisfied that they are honestly incurred and that the insured is without fault. Bond, who was charged with this investigation, had his suspicions aroused upon his first visit to the scene of the fire, and immediately thereafter requested the fire marshal, whose duty it was under the laws of the state of Maryland to investigate suspicious fires, to look into it. The result of that investigation seems to have confirmed his suspicions. Whether they were well or ill founded is not a question for our consideration. He was a man of experience in his calling, having no authority to waive any of the conditions of the policy, and claiming none, and there is nothing in his conduct from which any waiver can be implied. The legal proposition relied on by the plaintiffs in error is that "if the company, after knowledge of its right to declare the policy forfeited, does any act

which recognizes the continued existence of the policy, any act which it is authorized to do only by the policy, it thereby elects to waive the forfeiture," citing Titus v. Insurance Company, 81 N. Y. 419, and other cases, mainly in the State Reports, the only federal case cited being Insurance Co. v. Norton, 96 U. S. 241, 24 L. Ed. 689. The argument, as stated on page 6 of plaintiffs in error's brief, is "when the company employed Bond as its adjuster, and sent him on the plaintiffs' property, it committed a trespass if the policy was void. It did what it had no authority to do, except by virtue of the policy, and thereby it recognized the policy as existing, and in effect." It will not be profitable to review the various cases cited from the State Reports in support of the proposition stated. Ins. Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689, was a suit upon a policy of life insurance, where it was claimed that the policy was forfeited by reason of the nonpayment of certain notes given for the last payment, and the material question was whether, in view of the express provisions of the policy evidence introduced by the assured was relevant and competent to show that the company had authorized its agent to grant indulgence as to the time of paying the premium notes, and waive the forfeiture incurred by their nonpayment at maturity. We do not find in that case any sanction for the proposition stated. The rule in the federal courts is thus stated in Insurance Co. v. Wolff, 95 U. S. 333, 24 L. Ed. 387:

"The doctrine of waiver as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct, and enforce the conditions."

In Astrich v. German-American Insurance Company of New York, 131 Fed. 13, 65 C. C. A. 251, the plaintiff having several policies, some of which insured both merchandise and fixtures, and others insured fixtures only, had a conversation with one of the adjusters of the companies in interest, after the loss, and after a forfeiture as to the merchandise had been incurred, in which said adjuster requested plaintiff to furnish proofs of loss as to the fixtures and furniture, and it was held that such request, though complied with by plaintiffs, did operate as a waiver of the forfeiture as to the merchandise insured by an insurer whose policy covered merchandise only, and the court thus states the rule:

"A waiver is a voluntary relinquishment of the right that one party has in his relations to another. Such waiver may be either express or implied. An express waiver is governed by its own terms, takes care of itself, and is not often the occasion of dispute or litigation. An implied waiver, of a forfeiture, for instance, is where one party has pursued such a course of conduct, with reference to the other party who has incurred the forfeiture, as to evidence an intention to waive the same, or where the conduct pursued is inconsistent with any other honest intention, than an intention to waive the forfeiture, and the one who has incurred the forfeiture has been induced by such conduct to act upon the belief that there has been a waiver, and has incurred trouble and expense thereby. There is no confusion about the rules of law, applicable to this question. They are founded upon fundamental rules of evidence, and upon the obligations of morality obtaining in human affairs. It is

essentially a matter of intention, though circumstances may sometimes be such that the real intention is immaterial, and the question is, whether a party is not estopped by such conduct evidencing an intention upon which another has acted, to say what his true intention really was. In such cases, the ordinary and well-understood doctrines of estoppel by conduct is applicable."

An insurance company has the right, whenever a fire occurs, to inquire into the circumstances and the appointment by Rolker, the general agent, of Bond as the special agent for that purpose, cannot be construed as a waiver of any of the rights of the company. The policy sued on expressly provides as follows:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described and submit to examination under oath by any person named by this company. * * * This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part, relating to the appraisal, or any examination herein provided for."

The investigation into the circumstances of this fire was made by the fire marshal, who, by the statute of Maryland, was clothed with the authority and duty to make such investigation, and all that is properly inferable from Bond's participation in it is that he wished to be acquainted with the circumstances, in order to determine whether or not he would advise the company to rely upon the forfeiture. That such investigation was no waiver of the breach of the condition of the policy was expressly determined by this court in People's Bank v. Ætna Insurance Co., 74 Fed. 511, 20 C. C. A. 634, where the Court of Appeals for this circuit indorsed the opinion of the Circuit Judge as follows:

"Another ground relied upon as tending to prove a waiver upon the part of the defendant is the close investigation which the company made of the facts attending this loss, instituted upon its own behalf and prosecuted anterior to the receipt of the proofs of loss. It does not strike me that an insurance company, knowing of a loss, is obliged to wait and make no investigation, or is to limit itself to the information received in the proofs of loss. It can do that which the interests of mankind always induce—look out for yourself and protect your own interests."

As it is not denied that the policy was forfeited by reason of the breach of the condition as to additional insurance, unless the right of the defendant company to insist upon a forfeiture was waived by the acts, declaration, and conduct of the defendant or its agents, and as we are of opinion that there was no such waiver, and no evidence of such nature as would warrant the submission of that issue to the jury, it becomes unnecessary to consider the assignments of error which impeach the correctness of the court's ruling that the plaintiffs were not entitled to recover because of their failure to furnish proofs of loss within the time stipulated.

The judgment of the court below is affirmed.

Affirmed.