## ACTION ON BOND OF A DEFAULTING BUILDING CONTRACTOR.

Common Pleas Court of Hamilton County.

ELIAS R. MONFORT ET AL V. THE BANKERS SURETY COMPANY ET AL.

Decided, June 29, 1911.

*Contract for Erection of a Building—Default of Contractor—Action on Bond for Faithful Performance—Waiver of Provision that Suit Must Be Brought Within Six Months—Payment of Percentages Stipulated to be Retained Until Completion of the Work.*

1. The provision of a bond securing the faithful performance of a building contract, that suit upon the bond must be brought within six months of the first breach of the contract, will be deemed to have been waived by the bonding company, where a person was designated by the bonding company to complete the work, the owners consenting, but the amount remaining to be done was so great that by no possibility could it have been completed within six months from the first breach.

2. A bonding company will not be heard to complain that the plaintiff owners did not retain until the completion of the contract the percentage stipulated therein, where the payments were made to the person designated by the surety company to complete the work.

*S. W. Merrell, Henry T. Hunt* and *W. R. Collins,* for plaintiff.
*H. L. Gordon* and *Dolle, Taylor & O'Donnell,* contra.

CUSHING, J.

This case is now heard on the demurrer of the plaintiffs to the second and third defenses stated in the answer of the Bankers Surety Company. The plaintiffs seek to recover the sum of $33,452.30, with interest thereon, from the said surety company on the bond executed by it. The surety company admits the execution of the bond, the default of W. H. Ellis & Company; that the plaintiffs, trustees, have been damaged in about the said amount, but do not admit that the amount stated is the correct amount; and contends that the said surety company is not liable on its bond as provided therein for the reason

that suit was not brought to recover on said bond within six months after the default of W. H. Ellis & Company on its contract; and also because plaintiffs did not hold the ten per cent. provided in said contract and bond until after the final completion of the contract.

The admitted facts in the case are that in 1904 plaintiffs advertised according to law for bids to build a memorial hall at Grant and Elm streets in the city of Cincinnati; that W. H. Ellis & Company, a partnership, bid therefor the sum of $144,-561; that the contract to build said memorial hall was awarded to W. H. Ellis & Company at their said bid; that the said Bankers Surety Company executed the bond in question, indemnifying the plaintiffs against loss by reason of any failure of W. H. Ellis & Company to perform their contract according to the terms thereof; that said contract was in writing, dated March 4, 1905; that W. H. Ellis & Company attempted to perform said contract and defaulted therein May 9, 1905; that on May 13, 1905, the plaintiffs duly notified the said Bankers Surety Company of the said default and that it would be held responsible for the completion of the contract according to the terms of the same and the bond executed by the defenadnt company; that on or about July 15, 1905, an agreement was entered into by the parties, the same being evidenced by the paper writing following, which purports to be a communication from Lillie I. Ellis, to-wit:

"Having indemnified the Bankers Surety Company of Cleveland, Ohio, who is surety on the bond of W. H. Ellis & Company, with whom you entered into a contract under date of March 4th, for the construction of the Memorial Building at Grant and Elm streets, Cincinnati, Ohio, I respectfully request, in view of the fact that the firm is unable to complete its contract by reason of the proceedings pending between its members for a dissolution of the partnership, and I being ultimately liable for damages which may be sustained by the failure of the firm to complete their said contract, that I be granted permission to complete such contract in accordance with the plans and specifications forming part of the agreement, which you entered into with said firm, and herewith hand you the consent of the Bankers Surety Company to my undertaking such work."

The second is from the Bankers Surety Company in the following language:

"We have advised Mrs. Lillie I. Ellis of the demand made upon us as surety for the completion of the memorial building which W. H. Ellis & Company agreed to construct under contract which you entered into with them.

"We agree to Mrs. Lillie I. Ellis completing the building in accordance with her request and agree that all bills for material and labor approved by her or W. H. Ellis or Harry E. Kennedy, or the architect, shall be evidence of the amounts expended for such purpose and shall be included in the cost of completion of such structure, and when so approved shall be binding upon us as surety under such contract, it being distinctly understood that our liability as surety for such contract is not changed, but shall remain as originally fixed by a bond given on which we are surety for the faithful performance of the contract of W. H. Ellis & Company."

The amendment to the petition contains the following from the minutes of the trustees, viz.:

"And this board being now advised that Lillie I. Ellis is willing to finish said building in accordance with the contract, plans and specifications, and desires to subrogate herself to the rights of W. H. Ellis & Company in the completion of the memorial building, and the said Bankers Surety Company of Cleveland, Ohio, having filed with this board its written consent to Lillie I. Ellis completing the building in accordance with her request,

"*Therefore Resolved,* that Lillie I. Ellis be and hereby is granted permission to complete the said memorial building in accordance with the contract, plans and specifications as entered into by said W. H. Ellis & Company, and that she is permitted to proceed and faithfully perform said contract, plans and specifications in as complete a manner as the same were to be performed by the said W. H. Ellis & Company."

The bond of the said defendant company contained among others the following provisions:

"Provided further, that if the said principal shall fail to comply with the conditions of said contract to such an extent that the same shall be forfeited, then said surety company shall have the right and privilege to assume said contract and sublet

or complete the same, whichever said surety company may elect to do, provided it is done in accordance with said contract."

The said bond contained also the following provision:

"Provided further, that any suit at law, or proceeding in equity brought against this bond to recover any claim hereunder, must be instituted within six months after the breach of said contract and that said surety shall not be liable for a greater sum than the penalty hereof."

Two other provisions of said bond are set out in the third defense of said answer and are as follows:

"Payments will be made as the work progresses, but not oftener than once a month. The contractors will be allowed 90 per cent. of the value of the work set in place and 50 per cent. of the value of material delivered on the grounds. Upon acceptance of the entire work one-half of the balance due will be paid and the final payment will be made thirty days after acceptance of the entire work embraced in this contract.

"Provided further, that the obligee shall retain full performance of said contract, and until after limitation against lien shall have run, the percentages provided to be retained in said contract, and in the event of default by the principal in the terms of said contract this instrument shall operate from the date thereof as an assignment to said surety for its protection, indemnification and re-imbursement for all moneys earned or due or to become due to the principal, which shall not prior to such default have been paid unto the said principal on account of said contract. And the surety shall be subrogated to all the rights and properties of the principal arising out of said contract, and all deferred payments and any and all moneys and properties that may at the time of default be due or payable, or that may thereafter become due and payable to the said principal under a bid from said contract which shall not have been paid unto said surety, shall be agreed on any claim or claims the obligee may make upon said surety because of said breach."

The said Lillie I. Ellis entered upon the performance of said contract and so continued until about April 17, 1907, and this action to recover on the bond was brought March 21, 1908.

The plaintiffs demur to the second and third defenses stated in the answer of said surety company and contend that by the

terms of said bond and upon notice to said bonding company of the breach of the contract by W. H. Ellis & Company the said surety company was bound to complete the said contract or to stand upon the words of its bond and refuse to complete it, and that by its designation of Lillie I. Ellis to complete the said contract, she did so as the agent or representative of the said bonding company; that no contract relation existed between Lillie I. Ellis and these plaintiffs; that a contract relation did exist between Lillie I. Ellis and the said Bankers Surety Company; that the request of the said bonding company that Lillie I. Ellis should perform said contarct was an election by the said bonding company to assume said contract and a designation of the person that it desired to have complete the work for it.

The defendant contends that its bond provides that suit must be brought within six months after a breach of said contract by W. H. Ellis & Company; that this breach occurred on May 9, 1905, and as this action was not commenced until March 21, 1908, almost four years after the breach of said contract, that it is not liable on its bond; that the plaintiffs did not retain from Lillie I. Ellis on the part of the contract performed by her the percentages the bond and contract provided should be retained, and for that additional reason that it is not liable on said bond. It also contends that said bond should be strictly construed and that it can not be made liable under its obligation beyond the strict letter of its bond.

Counsel for defendant cite the case of *State of Ohio* v. *Medary*, 17 Ohio, 564, in support of their contention that the defendant company is not liable on its bond. The Medary case has been approved or followed in ten other cases by the Supreme Court of Ohio. It no doubt states the law of Ohio on the subject of the liability of bondsmen. On page 565 the court say:

"Sureties stand upon the words of the bond, and if the word will not make them liable, nothing can, there is no construction. no equities against sureties. If the bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way in order that it may prevail."

The facts stated in that case are that Timothy G. Bates was appointed a member of the board of public works. He gave a bond reciting his appointment as such member of the board of public works, and the bond was conditioned that Bates should faithfully discharge the duties of his said office and account for all moneys intrusted to him as such officer. Some time after qualifying as a member of said board and giving bond, Bates was by said board appointed an acting commissioner thereof and as such commissioner received large sums of money for which he failed to account.

On page 564, the court say that there is a difference between being a member of the board and being an acting commissioner; that the duties and powers of a member of the board and the duties and powers of an acting commissioner are different and distinct, and the risk and liability of sureties for one and the other are also entirely distinct.

Counsel for the surety company also cite the case of *Walsh* v. *Miller*, 51 O. S., 462, in support of their contention that a surety can not be liable beyond the plain terms of the bond. The question made in that part of the Walsh case to which counsel referred was that the bond provided that John B. Mannix will faithfully perform all duties as said trustee, when he was in fact an assignee under a proceeding in the Probate Court of Hamilton County, Ohio, where he was made assignee in a voluntary proceeding by Archbishop Purcell. In the Walsh case the court was construing and determining the meaning of the two words, "assignee" and "trustee" and it was in that connection that it announced and applied the general principle of law in the following language:

"While it is undoubtedly the law that sureties are not liable beyond the plain terms of their engagement, the rules governing the construction of their contract in arriving at their terms and scope, are not different from those which are applicable in the interpretation of all written agreements. It is enough in a written contract that the intention of the parties clearly appears though it be not fully and particularly expressed. * * * When the meaning and intention of the parties are perfectly plain no want of appropriate words shall render the instrument unavailing."

The court held that the terms trustee and assignee were, in law, for the same purpose and to the same effect and that the bond was liable.

It is also the law that the contract and bond executed contemporaneously must be construed together. *Brewing Co.* v. *Schultz,* 68 O. S., 407.

Counsel for defendant also cite the following cases in support of their contention that said bonding company is not liable by reason of the failure of the plaintiffs to bring suit thereon within six months as is provided in said undertaking. *Stone Company* v. *Drach Construction Co.,* 123 Fed., 746; *Lesher* v. *United States F. & G. Co.,* 239 Ill., 502; *Mill Company* v. *Heinselring Co.,* 39 Wash., 244; *Savings Bank* v. *Amer. Surety Co.,* 78 Fed., 188; *Hartwell* v. *Express,* 3 L. R. A., 342; *Express Company* v. *Caldwell,* 21 Wall., 264; *Insurance Co.* v. *McCookey,* 33 O. S., 555; *Insurance Co.* v. *Howle,* 19 C. C. 621; *Insurance Co.* v. *Schwan,* 1 C. C., 192; *Kellenring* v. *Masonic Aid Assn.,* 96 Fed., 177; *Insurance Co.* v. *West,* 6 O. S., 599, and a number of others. The facts in these cases which were before the court are not in any way similar to the facts in the case at bar. In none of the cases cited do we find an instrument executed subsequent to the breach of contract and within the time provided for the bringing of the suit as was done in the case at bar. If this case were heard on the bond and the contract, as originally signed and entered into, the authorities cited by the defense would apply, the demurrer would be overruled and judgment entered for the defendant.

It should be borne in mind that within three months after the default of W. H. Ellis & Company the defendant company executed the instrument quoted above, which must be considered in connection with and as a part of the bond of the defendant company, and it must here be determined what that instrument was and what was its effect in law upon the provisions of the bond limiting the time in which an action should be commenced for the breach of the contract.

The building to be constructed by W. H. Ellis & Company was to cost $144,561. Ellis & Company began work on this build-

ing subsequent to March 4, 1905. They defaulted in their contract on May 9, 1905, about sixty days after beginning the expenditure of so large an amount of money in the construction of the building. It therefore follows that when the surety company, on July 15, 1905, requested that Lillie I. Ellis be permitted to complete the said contract, that it knew that she could not, under any circumstances, complete said building within six months from May 9, 1905. The question then presents itself as to what in law was the effect of the request of the Bankers Surety Company and the acceptance of the person designated by that company, by the plaintiffs on the bond of the defendant. If it can be said that the defendant intended to rely on the strict letter of its bond, then the law would apply, that sureties are not liable beyond the words of the bond; that the language of the bond must be strictly construed; that there are no equities against sureties; and that the court is not authorized to give effect to a bond in any other way than by the strict letter thereof. But the court must go beyond this one provision of the bond, namely, that action thereon must be brought within six months after the first breach of the contract, and determine whether or not the surety company by its act, intended to assume the completion of the building and for that purpose designated its guarantor to perform the work for it. or whether or not by the execution of the paper writing, set out in the amendment to the petition, by the surety company, it intended to and did waive the provision of the bond that suit thereon must be brought within six months after the *first* default in that contract.

"A waiver is an act showing impliedly or expressly that the party agreed to rely on something other than the strict letter of its agreement." *Boos* v. *Ewing,* 17 Ohio, 525.

The language of the bond as set out in the amendment to the petition is:

"That if said principal shall fail to comply with the conditions of said contract to such an extent that the same shall be forfeited, then said surety company shall have the right and privilege to assume said contract and sub-let or complete the

same, whichever said surety company may elect to do, provided it is done in accordance with said contract."

Under this clause of the bond did the surety company assume and sub-let said contract?

The communication of the bonding company to the trustees recites that the trustees demanded that the bonding company complete the building, and that it agrees to Lillie I. Ellis completing the contract according to the terms and specifications of the contract, and if so carried on, its liability as surety should remain as originally fixed by the bond.

Defendants' answer pleads a forefeiture of the bond in the following language, to-wit:

"Suit must be instituted within six months after the first breach of said contract."

"A waiver of a forfeiture of insurance is where one party has pursued such a course of conduct, as to evidence an intention to waive the same, or where the conduct pursued is inconsistent with any other honest intention, than an intention to waive the forfeiture, and the one who has incurred the forfeiture has been induced by such conduct to act upon the belief that there has been a waiver, and has incurred trouble and expense thereby." *Astrich* v. *German American Ins. Co.,* 131 Fed., 20.

If the language of the instruments stated in the pleadings should not in express terms amount to a waiver of the bond, because suit was not instituted within six months after the first breach of the contract (which seems to me is the case), then the conduct of the parties has been such as to imply a waiver.

The bonding company will not be permitted to lead plaintiffs to believe that it did not intend to rely on the six months provision in its bond, and when that time has elapsed come forward and insist on a strict construction of the language of the bond.

It also seems to me in view of the contractual relation existing between the bonding company and Lillie I. Ellis, that the action of the bonding company was an election under its bond to assume the completion of the building, and that whatever

Lillie I. Ellis did, or any payments she received was as the agent and representative of the said bonding company. Therefore, the bonding company will not be heard to complain that the plaintiffs did not retain the percentages provided in the contract, as all payments that were made, were to Lillie I. Ellis, the representative of the said bonding company.

If the views here expressed correctly state the law applicable to the facts set out in the petition, the amendment to the petition and the second and third defenses in the answer of the Bankers Surety Company, the demurrers must be sustained and the said second and third defenses dismissed.