CHAINLESS CYCLE MANUFACTURING COMPANY, Respondent, *v.* THE SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT, Appellant.

1. INSURANCE — STANDARD POLICY — DUTY OF INSURED TO INITIATE APPRAISAL. It is not the duty of a person whose property is insured by a standard policy of fire insurance to initiate an appraisal, since the contract makes an appraisal a condition precedent to recovery only when one "has been required" by the insurer.

2. WHEN APPRAISAL MUST BE DEMANDED. The right of either party to a standard policy of fire insurance to require an appraisal when there is a disagreement as to the amount of loss is not indefinite as to time, but must be exercised within a reasonable period depending upon the facts of the particular case; and where the insurer knows that the insured desires a prompt appraisal or an adjustment so that the property damaged may

not suffer a further injury before it is sold, it cannot postpone its demand for an appraisal until after the insured, misled by its acts, has been placed in a position where one is impossible.

3. When Waiver of Appraisal a Question of Fact. The evidence in an action to recover a loss upon a standard policy of fire insurance reviewed and held to warrant a finding by the jury that the defendant had waived its right to require an appraisal, where it appears that the defendant demanded the appraisal knowing that it could not be had after making no response to plaintiff's demand for it and the inference is warranted that it did not desire an appraisal and had no intention of requiring one until it thought it could take advantage of the plaintiff.

4. Appeal — Objection to Unanswered Question. An objection to a question requesting a witness to state the contents of a telegram is not sufficient to raise the question on appeal whether the court erred in permitting such witness to state the contents of the telegram where the question objected to was never answered, and after the witness had given testimony tending to pave the way for secondary evidence, the sufficiency of which for that purpose was not tested by any objection, he stated the contents of the telegram without objection, and no motion was made to strike out his statement.

*Chainless Cycle Mfg. Co.* v. *Security Ins. Co.*, 52 App. Div. 104, affirmed.

(Argued November 21, 1901; decided December 31, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 29, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This action was upon a policy of fire insurance for the sum of $2,500, issued by the defendant to the plaintiff, upon its stock of bicycles, materials, supplies and machinery used in manufacturing and finishing bicycles, including parts manufactured and in process of manufacture. The answer alleged that the plaintiff had refused to unite with the defendant in appraising the loss, as provided by the policy, and that, therefore, the action was prematurely brought. No defense on the merits was set forth.

The stipulation contained in the policy, which, as it is claimed, was not complied with by the plaintiff, is as follows:

" In the event of disagreement as to the amount of loss, the

same shall, as above provided, be ascertained by two compe-
tent and disinterested appraisers, the insured and this com-
pany each selecting one, and the two so chosen shall first
select a competent and disinterested umpire ; the appraisers
together shall then estimate and appraise the loss, stating
separately sound value and damages, and failing to agree shall
submit their differences to the umpire, and the award in writ-
ing of any two shall determine the amount of such loss
* * *. The loss shall not become payable until 60 days
after the notice, ascertainment, estimate and satisfactory proof
of the loss herein required shall have been received by this
company, including the award of appraisers when an appraisal
has been required."

At the close of the evidence the trial judge submitted the
following questions to the jury :

"*First.* Did the defendant waive an appraisal of the
property ?

"*Second.* What was the amount of damage to the stock, if
any ?

"*Third.* What was the amount of damage to the machinery
and tools, if any ?"

The jury answered the first question in the affirmative, and
found that the total amount of the loss on stock was $7,500,
and on other property $2,500. The court thereupon directed
that a verdict be entered in favor of the plaintiff for $1,024.55,
which was the defendant's proportion of the loss, according
to the special verdict. Upon appeal to the Appellate Division
the judgment entered accordingly was affirmed, two of the
justices dissenting, and the defendant appealed to this court.

*Horace McGuire* for appellant. The provision for an
appraisement is an essential part of the policy, and where
there is a disagreement an appraisal is a condition precedent
to recovery. (*Silver* v. *W. Assur. Co.*, 164 N. Y. 381 ; 13
Am. & Eng. Ency. of Law [2d ed.], 359–361 ; *Hamilton* v.
*L. & L. & G. Ins. Co.*, 136 U. S. 242 ; *C. L. Co.* v. *Phenix Ins.
Co.*, 80 Mich. 116 ; *Morley* v. *L., L. & G. Ins. Co.*, 85 Mich.

218; *Pioneer Co.* v. *P. Ins. Co.*, 106 N. C. 281.) There is no proof that the defendant waived an appraisal. (*Uhrig* v. *W. Ins. Co.*, 101 N. Y. 362; *Bishop* v. *A. Ins. Co.*, 130 N. Y. 488; *Bradshaw* v. *A. Ins. Co.*, 137 N. Y. 137; *Kiernan* v. *D. C. M. Ins. Co.*, 150 N. Y. 190.) It was error to receive any evidence tending to show that defendant had waived the condition of the policy requiring the damages to be ascertained by appraisement for the reason such waiver was not pleaded. (*Oakley* v. *Morton*, 11 N. Y. 25; *Crandall* v. *Clark*, 7 Barb. 169; *Weeks* v. *O'Brien*, 141 N. Y. 199; *La Chicotte* v. *R. R. E. Co.*, 15 App. Div. 380; *Alexander* v. *O'Hare*, 48 App. Div. 401.) The court erred in refusing to charge the jury that the defendant's right to an appraisal was a condition precedent to the right of action unless the defendant had waived that condition. (*Silver* v. *W. Assur. Co.*, 164 N. Y. 381.)

*Moses Shire* for respondent. The judgment must be affirmed if there is any evidence upon which to support the finding of the jury that the defendant waived its right to an appraisal. (*Ostrom* v. *Greene*, 161 N. Y. 353; *Cox* v. *Stokes*, 156 N. Y. 491; *Silver* v. *W. Assur. Co.*, 164 N. Y. 381; *McNally* v. *P. Ins. Co.*, 137 N. Y. 398; *Paltrovitch* v. *P. Ins. Co.*, 143 N. Y. 73.)

VANN, J. The policy in question was issued and countersigned by the firm of M. Beir & Co., the duly authorized agents of the defendant in the city of Rochester. On the morning of August 16, 1899, the day of the fire, these agents notified the defendant by mail that a loss had occurred; that six other companies were interested therein; that the probable amount of the entire loss was $2,500 and that the proportion of the defendant was $25. They closed their letter with these words: "Shall we have Mr. Norden represent and adjust for you?" The defendant answered by telegram, instructing said agents "to look after the loss in the usual way, or wait for the adjuster." M. Beir & Co. thereupon turned the matter over to Mr. Norden, an insurance adjuster of wide experi-

ence, who resided in Rochester, with instructions "to look after" the loss and adjust it.

On the 19th Mr. Norden, in company with a special agent of the defendant, looked over the property with the president of the plaintiff, and directed him to make an inventory, giving the valuation of the goods and the amount of the damage and in the meantime to clean and oil the iron and nickel parts and appliances. They also informed him that as soon as this was done they would make an adjustment of the loss, and named the 24th for that purpose. On that day Norden went to the factory alone, and was presented with a statement of the loss, amounting to upwards of $21,000. He expressed some surprise because it was so large, and said he would like time to correspond with his companies. The plaintiff requested him to telegraph, "as it was not right to keep the insured tied up there indefinitely," and suggested that they should "enter into an appraisal then and there." Mr. Norden said that he was not prepared to go into an appraisal, but would like to consult his companies, and that he would "set a time for a meeting when we could either appraise or settle the loss." After notifying the plaintiff that he would call a meeting of the adjusters of the companies, to be held in a few days, he telegraphed the defendant that the claim of the plaintiff was exorbitant, and added, "authorize appraisal or send special next Tuesday. Answer." It does not appear that the defendant answered the telegram, but on the following Tuesday, August 29th, the adjusters for all the companies, including the special agent of the defendant, met at the factory and looked over the property. A statement was presented to them embracing all the items of loss, as subsequently inserted in the proofs, but as the plaintiff had no copy it was returned to its president, and he was notified to prepare and serve proofs of loss. The adjusters appointed a committee, consisting of Mr. Norden and two others, to take charge of the matter, but neither the adjusters nor the committee either met or appointed a meeting, and Norden, assuming to act as chairman, took charge of the loss.

The plaintiff at once prepared its proofs of loss, and served them on the various companies interested. The proofs for the defendant were mailed to it on the 30th of August, with a letter from the plaintiff stating that " unless you adjust this loss or agree to an appraisal on or before Tuesday, September 5th, 1899, you will be deemed to have waived your rights to such appraisal, and we will proceed to dispose of the property to the best possible advantage." The defendant did not answer this letter, and, so far as the plaintiff knew, paid no attention to it. On the 31st of August Mr. Norden, acting as chairman of the committee, wrote to the defendant asking: " that upon receipt of proofs of loss, which have been demanded by the committee, you will mail them to me at once. * * * All precautions have been taken to avoid litigation." The proofs of loss reached the defendant on the 1st of September, and on the 4th its secretary wrote Mr. Norden, as chairman, inclosing the proofs, stating that they were received on the 1st instant, and closing as follows : " We have taken no action on them, relying on you and your committee to do all that is needed." This letter, which contained no instructions with reference to the appraisal or to the sale proposed by the plaintiff, did not reach Mr. Norden until the 6th.

In the meantime the president of the plaintiff met Norden on the 5th, and in its name demanded an appraisal. Mr. Norden asked for the name of the man selected as its appraiser, and, upon being told, said that he did not want an appraisal, but wanted to settle. Negotiations followed, occupying several hours, which resulted in an adjustment of the loss for all the companies at the sum of $11,000. An agreement was drawn up and Mr. Norden signed it for four of the companies, stating that he would sign for the others, including the defendant, when " the papers " arrived. The next day, pursuant to its notice to the defendant, the plaintiff sold a substantial part of the damaged property, which, in addition to tools and bicycles, complete and incomplete, consisted of more than one hundred thousand axles, chains, sprockets, handle-bars and

other pieces, some of which were burned, others bent, and all were deteriorating owing to rust. Nothing was heard from the defendant or any of its representatives until the 12th or 13th of September, when, through its attorneys residing in Rochester, it notified the plaintiff by mail " that any pretended adjustment of the loss made by Mr. Henry Norden of this city, was made without authority on the part of the companies we represent, and the same is hereby and entirely repudiated. The proofs of loss served by you have been received, and we also notify you that we disagree with you in regard to the amount of the loss, and demand that the amount of the loss be ascertained by appraisement, as is provided by the policy."

No other demand for an appraisal was ever made by the defendant or in its behalf. The plaintiff disregarded said notice, and on the 2d of November commenced this action.

It is not the duty of a person whose property is insured by a standard policy, such as the one before us, to initiate an appraisal, for the contract makes an appraisal a condition precedent to recovery, only when one "has been required" by the insurer. Either party, however, has the right to require an appraisal when there is a disagreement as to the amount of loss. (*Silver* v. *Western Assurance Co.*, 164 N. Y. 381.) That right is not indefinite as to time, but must be exercised within a reasonable period, depending upon the facts of the particular case. Neither party can so use the right as to take undue advantage of the other, but both must act in good faith. (*Uhrig* v. *Williamsburgh City F. Ins. Co.*, 101 N. Y. 362; *Bishop* v. *Agricultural Ins. Co.*, 130 N. Y. 488.) It is not a weapon of attack, but of defense, and a party who intends to use it must give reasonable notice of such intention, for its omission to do so will be evidence of waiver, more or less conclusive according to the circumstances. The insurer, for instance, knowing that the insured desires a prompt appraisal or an adjustment, so that the property may not suffer further injury before it is sold, cannot postpone its demand for an appraisal until after the insured, misled by its acts, has been placed in a position where one is impossible.

It was in the power of the defendant to waive an appraisal, either expressly or by not making a seasonable demand therefor, and the main question that we are called upon to decide is whether there was any evidence to warrant the jury in finding a waiver. No question arises as to the weight of evidence, for the verdict is conclusive in this court, even when the affirmance is not unanimous, unless it appears that there was no evidence which, according to any reasonable view, supports the conclusion of the jury. (*Ostrom* v. *Greene*, 161 N. Y. 353.)

The defendant was notified of the fire August 16th, the day it occurred. On the 19th its representative examined the property, required an inventory and fixed a date for adjustment. On the 24th a statement of the loss was presented and the plaintiff suggested an appraisal, but the agent of the defendant said he did not want one, and that he would consult his company and set a time to appraise or settle. On the 29th the adjusters met and appointed a committee, but neither they nor their committee ever did anything. The proofs of loss were mailed on the 30th, with notice that unless the company adjusted or agreed to an appraisal by September 5th, it would be deemed to have waived its right in that regard, and that the plaintiff would sell the property. The proofs reached the defendant on the 1st of September, but it gave no notice to the plaintiff and made no request. It neither demanded an appraisal nor asked for a postponement of the sale. It made no protest as was done in *Hamilton* v. *Liverpool, London & Globe Insurance Co.* (136 U. S. 242). It did not even telegraph the plaintiff that the sale would be at its own risk, but remained silent, although it knew that because the property was wasting through rust, the plaintiff intended to sell on the 6th. On the 4th it sent the proofs of loss to its representative, stating that it relied upon him and his committee to do what was necessary. He met the president of the plaintiff on the 5th, the day before the time fixed for the sale, when the plaintiff demanded an appraisal, but he said he did not want one as he wanted to settle. Negotiations followed and a

settlement was agreed upon, but the written agreement embracing it was not signed, because the proofs of loss had not reached the agent. The next day, at the time named for the purpose, a large part of the property, which was rapidly deteriorating, was sold, as the defendant knew it would be. Six days more passed before anything was heard from the defendant, when it attempted to repudiate the action of its agent, and for the first time demanded an appraisal. It waited for nearly a month after the fire and for twelve days after it had received the proofs of loss, without suggesting an appraisal, although the plaintiff had offered to unite in one. When asked by Norden to "authorize appraisal or send special next Tuesday," it did not authorize an appraisal but sent its special on the day named. It made no demand until it knew that compliance was impossible. The plaintiff not only tendered but demanded an appraisal when one could have been had, still the defendant kept silent, except as it spoke through Norden, until the sale had taken place, pursuant to notice in order to prevent further loss, when, repudiating the settlement made by Norden, but without repudiating his action in any other respect, it demanded an appraisal, knowing that it could not be had, and now relies upon that demand as its sole defense to the action. If Norden had no power to settle, after the meeting of the adjusters, he had power to negotiate and to represent the defendant in declaring that it did not want an appraisal. The defendant, by its letter of September 4th, recognized him as its representative, independent of the committee. The evidence warrants the inference that it did not desire an appraisal and had no intention of requiring one until it thought it could take advantage of the plaintiff. Under these circumstances, we cannot say, as matter of law, that the demand of the defendant for an appraisal was reasonable, for it was bound to act in good faith and not to remain silent when it was its duty to speak.

One ruling relating to evidence merits brief notice. Mr. Folger, of the firm of M. Beir & Co., the agents of the defendant, was subpœnaed by the plaintiff to produce certain letters

and papers. After testifying that his firm at once notified the defendant of the fire and that they received a telegram in response, he was asked to state its contents. This was objected to " as incompetent and immaterial ; any communications between the defendant and its agent are not competent evidence," but the objection was overruled and exception was taken. The defendant thereupon " also objected upon the ground that the original telegram" was "not produced." There was no ruling upon this objection, and the question previously ruled upon was not answered. The witness, doubt · less in answer to further questions, thereupon testified in substance that he had searched for the telegram but could not find it ; that it might be in some other file, and he would look for it further if necessary. No request was made that he should do so, and without objection he stated the contents of the telegram. If that statement was made in answer to a question, no objection was made to it, and if it was volunteered, no motion was made to strike it out. The prior objection did not apply, because evidence had been given after it was interposed, which changed the situation by tending to pave the way for secondary evidence. Whether the evidence was sufficient for that purpose was not tested by an objection, and, hence, the position of the defendant that " the court erred in permitting Folger to state the contents of the telegram" cannot be sustained.

The record presents no reversible error, and the judgment should, therefore, be affirmed, with costs.

BARTLETT, MARTIN, LANDON and CULLEN, JJ., concur ; PARKER, Ch. J., and O'BRIEN, J., dissent.

Judgment affirmed.