Simon ZAROUR and Lori Zarour, Plaintiffs,

v.

PACIFIC INDEMNITY COMPANY, Defendant.

No. 15–cv–2663 (JSR).

United States District Court, S.D. New York.

Signed July 6, 2015.

712

Tomas Espinosa, Tomas Espinosa, Esq., North Bergen, NJ, for Plaintiffs.

Edward Michael Koch, Liberty View, Cherry Hill, NJ, John P. Foudy, Rosner, Nocera & Ragone, LLP, New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs Simon and Lori Zarour bring this insurance coverage action against defendant, Pacific Indemnity Company. Plaintiffs seek coverage under Policy No. 11635304–02 issued by defendant (the "Policy") for damage to their home sustained during Superstorm Sandy on October 29, 2012. This action was filed in the District of New Jersey on August 26, 2014, and was transferred to this Court on April 21, 2015. Plaintiffs filed their First Amended Complaint on May 12, 2015 ("Am. Compl."). In it, they allege that defendant failed to investigate and pay their claim fairly, promptly, and in good faith as required by the Policy. *Id.* ¶¶ 21–31. As a result of defendant's failure to pay their claim, plaintiffs further allege that they have been unable to complete the necessary repairs, leading to further damage to the Property. *Id.* ¶ 22. Plaintiffs assert one claim for breach of contract and one claim for breach of the implied covenant of good faith and fair dealing, and seek compensatory, consequential, and punitive damages, interest, and attorneys' fees. *Id.* ¶¶ 41, 46.

Defendant now moves for summary judgment (1) compelling a binding appraisal pursuant to the terms of the Policy and either dismissing or staying this action pending completion of the appraisal process; and (2) dismissing plaintiffs' demands for consequential and punitive dam-

ages and their claim for breach of the implied covenant of good faith and fair dealing.

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). In making this determination, "the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir.2015) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994)).

The undisputed facts are as follows.[1] Plaintiffs own a home in Spring Valley, New York (the "Property"). *See* Defendant's Local Rule 56.1 Statement of Undisputed Facts ("Def. R. 56.1") ¶ 4. They submitted their initial claim for Superstorm Sandy-related damage to the Property to defendant on December 11, 2012, and defendant contacted them regarding that claim the same day. *Id.* ¶¶ 5–7. By email dated December 17, 2012, plaintiff Simon Zarour notified defendant that he estimated the loss at $40,971. *Id.* ¶ 8. On January 22, 2013, defendant's claims adjuster, Anthony Jerrick, inspected the Property and estimated the damage at $40,392.71. *Id.* ¶ 9. On January 25, 2013, defendant paid plaintiffs $40,471, representing plaintiffs' estimate of the damage minus the $500 deductible. *Id.* ¶ 10. In his letter to plaintiffs enclosing payment, Mr. Jerrick stated: "We would like you to know that acceptance of our check is not a release, nor a waiver, of any of your rights under the policy. Your claim can be re-opened, or re-evaluated, if appropriate." Declara-

---

[1] Because plaintiffs failed to submit a response to defendant's Local Rule 56.1 State-ment, the facts set forth therein are deemed admitted. *See* Local Civil Rule 56.1(c).

tion of Anthony Jerrick ("Jerrick Decl.") dated May 27, 2015, ECF No. 32, Ex. 3 at PIC00032. Defendant has never denied coverage for plaintiffs' Superstorm Sandy claim. Def. R. 56.1 ¶ 12.

Plaintiffs accepted the payment and did not contact defendant again regarding their Superstorm Sandy claim until this action was filed in the District of New Jersey on August 27, 2014. *Id.* ¶ 11, 13. After this action was filed, plaintiffs gave defendants an unsigned letter dated January 14, 2014 from an attorney purporting to represent plaintiffs, which asserted that the previous payment was inadequate and demanded payment of an additional $196,344.97. *Id.* ¶ 14; Jerrick Decl. Ex. 6. That letter did not appear in defendant's claim file or records, and Mr. Jerrick had never seen it before this lawsuit was filed. *See* Jerrick Decl. ¶ 14. Defendant then retained a consultant to re-inspect the Property and re-evaluate plaintiffs' claim. Def. R. 56.1 ¶ 15. Based on that inspection, defendant paid plaintiffs an additional $16,821.03 on January 20, 2015. *Id.* ¶ 16. This action was then transferred to this Court, and in advance of the Case Management Conference held on May 14, 2015, defendant's counsel notified plaintiffs' counsel that defendant intended to demand appraisal pursuant to the Policy. *Id.* ¶¶ 18–20. Defendant made a written demand for appraisal by letter dated May 27, 2015. *Id.* ¶ 21.

Attached to their opposition to the instant motion is an affidavit from plaintiff Simon Zarour. *see* Affidavit of Tomas Espinoza dated June 18, 2015 ("Espinoza Aff."), Ex. A, ECF No. 38–1. Mr. Zarour states that the initial estimate that he submitted to defendant covered only "cosmetic things." *Id.* ¶ 3. He states that Mr. Jerrick, during his evaluation of the home, pointed out that "there was a lot more here" and asked him why he "didn't in-

clude the additional damages." *Id.* ¶ 4. When Mr. Zarour followed up with Mr. Jerrick several weeks later, Mr. Jerrick told him he "was ... going to agree to [Mr. Zarour's] estimate, with the exception that the main roof had a few rafters that were damaged and need to be replaced as well as different sections of the kitchen area as well." *Id.* ¶ 4.

Sometime after this conversation, a small outbuilding on the Property was damaged by "wind and a tree and water." *Id.* ¶ 5. Mr. Jerrick agreed to pay the additional damage and told Mr. Zarour, "I am closing the file." *Id.* Mr. Zarour found his attitude "abrasive" and felt "offended." *Id.* He believed that Mr. Jerrick told him the file was closed "with the intent to shut [him] up and to frustrate [his] efforts." *Id.* ¶ 9. Subsequently, Mr. Zarour had his own appraiser evaluate the damage to the Property, and his appraiser "found a lot more things that were not addressed in Mr. Jerrick's or [Mr. Zarour's] estimate." *Id.* ¶ 6. He asserts, for the first time, that he now believes that "the damages are in excess of $700,000." *Id.* ¶ 7.

Plaintiffs have further submitted purported expert reports from an architect and an environmental consulting service, both of which are dated June 17, 2015, several weeks after defendant's motion was filed. *See* Espinoza Aff. Ex. A–1 & A–2. The architect's report opines that the water damage to the Property is extensive and recommends that the structure be demolished and completely rebuilt. *Id.* Ex. A–1. The environmental report states that previously hidden water damage has resulted in microbial growth, and recommends "invasive inspections of walls and ceilings" to uncover the extent of the damage. *Id.* Ex. A–2.

Defendant now moves to compel appraisal pursuant to the Policy, which provides:

If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal.

If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire.... The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss....

Jerrick Decl., Ex. 1, at PIC00184.

"New York public policy favors an appraisal proceeding over a trial on damages." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, No. 01 Civ. 9291, 2004 WL 2979790, at *3 (S.D.N.Y. Dec. 1, 2004). This pro-appraisal policy is reflected in the November 2014 amendment to Section 3408(c) of the New York Insurance Law. The amended Section 3408(c) provides that "[a]n appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause or the insurance policy and not as an arbitration." N.Y. Ins. L. § 3408(c). In passing this amendment, the New York State Assembly explained that it intended to encourage use of the appraisal process as a more efficient means to resolve valuation disputes:

Unfortunately, the Courts have taken a limited view as to what issues are subject to appraisal. This bill would clarify that the amount of the loss is a proper subject of arbitration. This change will result in substantial savings in litigation costs to both sides of a dispute.

Jerrick Decl. Ex. 16.

The instant dispute falls squarely within the scope of the Policy's appraisal clause. The undisputed facts demonstrate that the dispute between the parties concerns the "amount of loss." Defendant does not and has never denied that it is obligated to cover Superstorm Sandy-related damage. It disputes only the extent and dollar value of its liability. Similarly, plaintiffs' two expert reports relate exclusively to the extent of damage to the Property. Therefore, the only dispute relates to the "extent" and "amount" of the loss or damage, N.Y. Ins. L. § 3408(c), and the parties' dispute is subject to appraisal.

Plaintiffs argue that appraisal is not appropriate because the dispute goes to the "scope of coverage." It is true that, under New York law, the appraisal procedure is "limited to factual disputes over the amount of loss for which an insurer is liable," and cannot decide "purely legal issue[s]" such as "the scope of coverage provided by an insurance policy." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005). However, plaintiffs do not dispute that defendant has never formally denied coverage for plaintiffs' Superstorm Sandy-related claim, nor do they identify any dispute regarding the meaning of the contract of insurance. The only purported coverage issue that plaintiffs identify is the cause of the damage to their home. The Second Circuit, however, has found that the question of "[a]pportioning damage causation" is "essentially a factual question ... to be resolved by making factual judgments

about events in the world, not legal analyses of the meaning of the insurance contract." *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 206 (2d Cir.2012). Therefore, the issue of damage causation is properly subject to appraisal.[2]

■ Nor has defendant waived its right to appraisal by failing to make its demand earlier. The right to appraisal "is not indefinite as to time, but must be exercised within a reasonable period, depending upon the facts of the particular case." *Chainless Cycle Mfg. Co. v. Sec. Ins. Co., of New Haven*, 169 N.Y. 304, 310, 62 N.E. 392 (1901). A party may demand appraisal even after litigation is commenced. *Amerex Grp.*, 678 F.3d at 200. In determining the timeliness of an appraisal demand, courts consider three factors: (1) whether the appraisal would "result in prejudice to the insured party"; (2) "whether the parties engaged in good-faith negotiations over valuation of the loss prior to the appraisal demand"; and (3) "whether an appraisal is desirable or necessary under the circumstances." *Id.* at 201 (internal quotation marks omitted).

■ In this case, the undisputed facts make clear that defendant's appraisal demand was timely. First, although over two years elapsed between Superstorm Sandy and defendant's demand for appraisal, that delay is largely attributable to plaintiffs, who waited nineteen months between accepting defendant's initial payment and commencing suit. They cannot, therefore, complain of prejudice. *See id.* at 203. Second, defendant continued to attempt to resolve the dispute after this action was filed, and even made an additional payment to plaintiffs. Defendant made its demand for appraisal only after

the case was transferred to this Court and a Case Management Conference was scheduled. Finally, the valuation of plaintiffs' claim is the central issue in this case, and resolution of that issue may well lead to a settlement. And while the instant valuation dispute is not particularly complex, experienced appraisers working within the time limits set forth in the Policy would likely be able to resolve it more expeditiously than if it were fully litigated before this Court. Accordingly, the Court finds that defendant is entitled to appraisal of plaintiffs' claim, including on the issue of damage causation, and will stay the action pending completion of the appraisal process.

■ Defendant further moves for summary judgment dismissing plaintiffs' demands for consequential and punitive damages, as well as their claim for breach of the implied covenant of good faith and fair dealing. With respect to the latter, defendant allegedly breached its duty of good faith and fair dealing by, *inter alia*, misrepresenting "that some of the damage to the Property was not covered under the Policy," "refus[ing] to fairly adjust Plaintiffs' claims for damage," and conducting "an outcome-oriented investigation, which resulted in a biased, unfair and inequitable evaluation of Plaintiffs' losses." Am. Compl. ¶¶ 21, 26, 31. These claims, however "do not provide a distinct cause of action because they rest on the same allegations as the breach of contract claim." *Vitrano v. State Farm Ins. Co.*, No. 08 Civ. 00103, 2008 WL 2696156, at *3 (S.D.N.Y. July 8, 2008). It is well settled that "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and

---

**2.** At oral argument, plaintiffs' counsel stated that he would consent to appraisal so long as it included the issues of "scope" and "causation." As discussed above, "scope" is not an appropriate subject for appraisal, as it involves interpretation of the contract of insurance, but the purely factual issue of causation is.

fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir.2002); *see also Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13 Civ. 2291, 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014) *aff'd*, 581 Fed.Appx. 49 (2d Cir.2014) ("When the alleged breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from the breach of the insurance contract, those claims are redundant." (internal quotation marks omitted)). Accordingly, plaintiffs' implied covenant claim must be dismissed as duplicative of their breach of contract claim.

■ Even if plaintiffs' implied covenant claim were not duplicative, defendant has demonstrated that there is no genuine issue of material fact regarding its good faith. Plaintiffs do not dispute that defendant responded to their original claim notice on the same day that it was filed, Def. R. 56.1 ¶¶ 6–7; that defendant promptly performed an inspection and paid all of the damages claimed by plaintiffs just over a month later, *id.* ¶ 10; that plaintiffs did not dispute the adjustment of their claim and had no further contact with defendant until the filing of this suit, *id.* ¶ 13; or that, after this suit was commenced, defendant retained a consultant to re-inspect the Property and made an additional payment to plaintiffs as a result, *id.* ¶ 16. Thus, all the evidence indicates that defendant processed plaintiffs' claims promptly and in good faith.

Plaintiffs' only purported evidence to the contrary is found in plaintiff Simon Zarour's affidavit, in which he states that he was offended by Mr. Jerrick's attitude and that he took Mr. Jerrick's statement about closing the file to preclude any re-evaluation of his claim. *See* Espinoza Decl. Ex. A. However, plaintiff's subjective feeling of offense is insufficient to raise a genuine issue of material fact as to whether defendant acted in bad faith, particularly where Mr. Jerrick's letter enclosing payment expressly informed plaintiff that the "claim can be re-opened or re-evaluated if appropriate." Jerrick Decl. Ex. 5. Mr. Zarour further states that the "defendant also stated that the damages were not within the covered risk." Espinoza Decl. Ex. A ¶ 10. Even if that were true, however, defendant never formally denied coverage, and any statement it may have made that some unspecified portion of the damages claimed were not within the covered risk does not establish bad faith. *See Jane St. Holding*, 2014 WL 28600, at *10 ("Mere difference of opinion between an insurer and an insured over the availability of coverage does not constitute bad faith."). Accordingly, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

■ Plaintiffs' demands for consequential and punitive damages fare no better. Plaintiffs demand consequential damages for both their breach of contract and breach of the implied covenant of good faith and fair dealing claims. New York law provides that a plaintiff may recover consequential damages only if they "result[ ] directly from a breach of the implied covenant of good faith and fair dealing." *Simon v. Unum Grp.*, No. 07 Civ. 11426, 2009 WL 2596618, at *7 (S.D.N.Y. Aug. 21, 2009); *see also Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203, 856 N.Y.S.2d 513, 886 N.E.2d 135 (2008); *Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 196, 856 N.Y.S.2d 505, 886 N.E.2d 127 (2008). As discussed above, however, defendants are entitled to summary judgment that no such breach occurred. Accordingly, plaintiffs' demand for consequential damages with respect to both claims must be dismissed.

Finally, plaintiffs demand punitive damages on their breach of the implied covenant of good faith and fair dealing claim. That claim will be dismissed in its entirety for the reasons discussed above. In any event, however, under New York law, punitive damages for breach of contract are available only "if necessary to vindicate a public right." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). In order to state a claim for punitive damages, plaintiffs' allegations must establish the following: (1) "defendant's conduct must be actionable as an independent tort"; (2) the tortious conduct must be of an "egregious nature"; (3) "the egregious conduct must be directed to plaintiff"; and (4) "it must be part of a pattern directed at the public generally." *Id.* Plaintiffs plainly fail to meet these requirements. They do not allege that defendant breached any duty distinct from its contractual obligations; that its conduct was particularly egregious; or that such conduct was part of any pattern, directed at the public or otherwise. Accordingly, plaintiffs' claims for punitive damages must also be dismissed.

For the foregoing reasons, defendant's motion to compel appraisal is granted, and the case is hereby stayed pending completion of the appraisal process. Defendant's motion for summary judgment dismissing plaintiffs' demands for consequential and punitive damages and their claim for breach of the implied covenant of good faith and fair dealing is granted with prejudice. The Clerk is directed to close document number 31 on the ECF docket and to stay the case.

SO ORDERED.